### FIRST NAT. BANK OF BIRMINGHAM
### v.
### UNITED STATES.
#### Civ. A. No. 6927.

United States District Court
N. D. Alabama, S. D.
Dec. 30, 1953.

Cabaniss & Johnston, Birmingham, Ala., for plaintiff.

John D. Hill, U. S. Atty., Birmingham, Ala., Warren E. Burger, Asst. Atty. Gen., and Edward H. Hickey and Irving Malchman, Attys., Department of Justice, Washington, D. C., for defendant.

LYNNE, Chief Judge.

This cause, coming on to be heard by the court, without the intervention of a jury, was submitted upon the pleadings and proof, consisting of a written stipulation of facts signed by the parties hereto and filed herein. The court finds the facts to be as the parties have agreed they are for the purpose of this litigation. Concisely summarized, they appear hereinbelow.

The contract which is the basis of this action was entered into by and between the Alabama Aero-Mechanic Institute, Division of Airplane Engineers, and the Veterans Administration on February 1, 1950. The claims for monies to become due under the contract bear an assignment of the same date. Notice of the assignment was given to the defendant on May 26, 1950, as required by the Assignment of Claims Act, and due acknowledgment thereof was made by the defendant.

Under the terms of the contract, the contractor was required to submit vouchers for each student, setting forth the number of hours that the particular student was in training during the month and the charge for his training, including books, tuition, tools, etc. The original of such voucher was submitted to the Veterans Administration and a copy was sent to the Bank with a notation that the voucher had been assigned to the Bank. The Veterans Administration would then make payments directly to the Bank and the amounts would be credited against the debt of the contractor to the Bank.

The Bank lent money to the contractor on the security of this contract from time to time as funds were needed by the contractor. Under the standard operating procedure of the Bank, when a

new amount was lent the old note was cancelled and a new note was made for the balance of the old note plus the new advance. This procedure was followed until the final balance of $12,042.30 was reached on August 31, 1950. The Bank had no knowledge of any irregularities on the part of the contractor until after all loans had been made and the final balance had been reached.

The Veterans Administration subsequently found some alterations in the records of the contractor and on May 6, 1951, the contractor entered a plea of guilty to an information in six counts charging him with a violation of 18 U.S.C.A. § 1001. This conviction was based upon vouchers arising out of a prior contract between the contractor and the Veterans Administration and is in no way connected with the instant suit.

However, the Veterans Administration also found that fraud had been practiced under the contract which is the subject of this suit. The fraud consisted in the submission of vouchers seeking payment for training rendered to veterans on days when the veterans were not actually in attendance. Six of these vouchers were paid by defendant, resulting in a fraudulent overcharge in the aggregate amount of $74.02; the remaining seven vouchers, which were not paid by defendant, contained fraudulent overcharges in the aggregate amount of $52.35. All of the thirteen fraudulent vouchers were submitted by the contractor to defendant after February 1, 1950, and prior to May 26, 1950, the date on which notice of the assignment was given to defendant pursuant to the Assignment of Claims Act.

None of the fraudulent vouchers are included in the list of vouchers sued on (Exhibit C to complaint). Defendant has refused to honor plaintiff's request for payment of the balance allegedly owing under the contract which is the subject matter of this suit on the ground that defendant may set off the debt which the contractor owes it under 31 U.S.C.A. § 231, arising out of the sub-

mission of such fraudulent vouchers. Plaintiff instituted the present action on March 20, 1952, under the Tucker Act, 28 U.S.C.A. § 1346(a) (2), seeking to recover on unpaid non-fraudulent vouchers and on which the contractor has rendered the services required to be performed under the subject contract. The vouchers listed in Exhibit C to the complaint total $12,981.96; the complaint prays for damages in the amount of $10,000, the jurisdictional limit of the Tucker Act.

The Bank was guilty of no fraud or wrongdoing and made all of the loans which are involved in this suit without having acquired any knowledge of the fraud committed by the contractor. It advanced its money in good faith on the security of the pledged vouchers, and the defendant admittedly received the services and benefits to which it was entitled under the contract, and if the defense of set-off is not allowed, the Government admittedly owes the money for which this suit was brought.

Having abandoned an earlier insistence that it might claim a forfeiture under the provisions of 28 U.S.C.A. § 2514, the defendant is content to rest upon its right to set-off against plaintiff's demand the damages sustained by it in the amount of $2,000 for each of the thirteen false and fraudulent vouchers submitted under the contract, the subject matter of this suit, plus double the amount of the actual damages sustained by it, as provided in 31 U.S.C.A. § 231. In brief, defendant contends that contractor owes it the sum of $26,000 together with $148.04 in double damages, a total amount of $26,148.04, and that it may set off such indebtedness against the claim of plaintiff in the amount of $10,000.

Defendant's demand for damages based upon such false vouchers having ripened before the assignment to the Bank was effectuated, in compliance with the provisions of the Assignment of Claims Act of 1940, as twice amended, July 26, 1947, and May 15, 1951, 31 U.S.C.A. § 203, it seems

clear that the Bank took the assignment of the contract and the right to payments thereunder subject to then existing set-offs. Ozanic v. United States, 2 Cir., 1951, 188 F.2d 228; 2 Williston, Contracts, p. 1243 et seq. Unless some impediment is inherent in the Assignment of Claims Act or in the nature of the demand sought to be set off, it is apparent that the defendant is due to prevail, either wholly or partially, in its asserted defense.

■ In no way persuaded that the Assignment of Claims Act is a sort of catalytic agent transforming the subject contract, obviously an otherwise non-negotiable chose in action, into a negotiable instrument, this court is of the opinion that nothing in such Act prohibits the set-off for which defendant contends. It is sufficient for the purpose of this opinion to point out that the contract herein involved does not contain a "no reduction" clause; it is with the Veterans Administration which is not a designated department or agency, and that defendant's claim against the contractor did not arise independently of such contract. Modern Industrial Bank v. United States, 1944, 101 Ct.Cls. 808; cf. Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917.

■ Invoking the principle that a statutory penalty generally cannot be used as a set-off or counterclaim, 47 Am. Jur., Sec. 35, plaintiff relies on the proposition that 31 U.S.C.A. § 231 is a drastically penal statute and that it provides for recovery by the United States of a penalty for the submission of false vouchers. At one time this contention would have found favor with the court, as witness United States v. Weaver, D.C., 107 F.Supp. 963. However, the United States Court of Appeals for the Fifth Circuit in reversing the above-styled case, sub nom, United States of America v. Weaver, Sr., 5 Cir., 1953, 207 F.2d

796 added its gloss to the opinion of the Supreme Court of the United States in United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, and in construing the substantially identical language of Section 26(b) (1) of the Surplus Property Act of 1944, 50 U.S. C.A.Appendix, § 1635(b),[1] set the matter at rest with the following pronouncement: "This is not a criminal prosecution; it is not a civil action for a penalty; it is a civil action to recover an award of damages of a compensatory nature, payable to the United States for injuries to its property rights." [207 F.2d 797.]

■ But, plaintiff insists, arguendo, that the maximum permissible set-off would be only $2,000 since the vouchers sued on are all part of one contract and the penalty would attach to the one contract, rather than to the separate vouchers submitted thereunder. This court does not at all agree. Heretofore it held precisely the contrary in United States v. Gardner, D.C.1947, 73 F.Supp. 644. No good reason has been advanced or has occurred to the court for receding from the view it entertained then. The contract itself was tainted with no fraud in its inception or execution. Numerous vouchers were submitted thereunder which were affected with no falsity. It is clear to the court that the incidence of the fraud on each false voucher "is as clearly individualized as is the theft of mail from separate bags in a post office". United States ex rel. Marcus v. Hess, supra [317 U.S. 537, 63 S.Ct. 388].

The court reluctantly, because of the apparently unrealistic result reached, concludes that defendant is entitled to a set-off in excess of plaintiff's demand and that this action is due to be dismissed with prejudice.

An order will be entered in conformity with this opinion.

1. Now 40 U.S.C.A. § 489.