## ROSENMAN et al. v. UNITED STATES.
### No. 45197.

Court of Claims.
Feb. 7, 1944.

Before WHALEY, Chief Justice, and WHITAKER, MADDEN, LITTLETON, and JONES, Judges.

WHITAKER, Judge.

Plaintiffs, as the executors of the last will and testament of Louis Rosenman, sue to recover estate taxes alleged to have been erroneously exacted. The claim is based upon their right to deduct from the gross estate sums for executors' commissions, attorneys' fees, miscellaneous expenses, and an item of $25,000 paid to Martin Rosenman in settlement of a claim he presented against the estate.

The items of executors' commissions, attorneys' fees, and miscellaneous expenses are not in dispute, but defendant denies that the estate is entitled to the deduction of the $25,000 paid to Martin Rosenman in settlement of his claim. The defendant also says that the plaintiffs are barred from collecting all of the amount claimed, except $10,497.34, because the balance is barred by the statute of limitations on the filing of claims for refund.

The latter defense we will discuss first.

Louis Rosenman died on December 25, 1933. The executors were due to file an estate tax return on December 25, 1934, but as this date approached plaintiffs saw that it would be impossible by that time to file an accurate return; they, accordingly, on December 11, 1934, requested an extension of time. The Commissioner granted an extension until February 25, 1935, but in his letter, dated December 15, 1934, granting it he stated: "The extension of time for filing the return does not operate to extend the time for payment of the tax. It is suggested that the tax be estimated and paid to avoid delinquency in payment, the consequent liability for penalty and the accumulation of interest at the rate of one per centum per month from the due date until paid."

In response thereto the plaintiffs on December 24, 1934, forwarded the Collector a check for $120,000 "as a payment on account of the Federal Estate tax." On February 25, 1935, plaintiffs filed a return showing a tax of $80,224.24. The Collector applied so much of the $120,000 toward the payment of the tax shown on the return, and retained the balance in the suspense account in which the remittance had been originally deposited, pending an audit of the return. After an audit, the Commissioner, in April, 1938, assessed an additional tax of

Carter T. Louthan, of New York City (Mitchell, Taylor, Capron & Marsh, of New York City, on the brief), for plaintiffs.

J. W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

$48,534.84. The balance remaining in the suspense account, $39,775.76, was applied toward the satisfaction of this deficiency, and demand was made on the plaintiffs for the payment of the balance, together with interest. The plaintiffs paid this amount, $10,497.34, on April 22, 1938.

When plaintiffs filed the return showing the tax due of $80,224.24, they did not immediately demand refund of the balance they had remitted on account of the tax, to wit, $39,775.76; but, no audit of its return having been made by March 26, 1938, plaintiffs on that date did file a claim for refund of the balance. This was about three years and three months after the remittance. Then, after payment of the additional tax assessed, plaintiffs filed another claim for refund on May 20, 1940, on the ground that the Commissioner had not allowed deductions of $91,685.45 for executors' commissions, $31,000 for attorneys' fees, $25,483.69 for miscellaneous administration expenses, and $25,000 which was paid in settlement of Martin Rosenman's claim.

Plaintiffs' right to recover depends on whether or not these two claims were filed within the statutory period of three years.[1]

Plaintiffs say that the remittance of $120,000 was merely a deposit and was not a payment of tax, and that the date the statute began to run was the date the deposit was applied in settlement of the tax found to be due. This position is untenable. The $120,000 was paid in response to the above-quoted statement in the Commissioner's letter granting the extension of time for filing the return, in which he stated that the extension of time for filing the return did not extend the time for payment of the tax, and in which he suggested that the tax be estimated and paid to avoid delinquency in payment and the consequent liability for penalty and interest. In the letter transmitting the $120,000 the executors said that it was being transmitted "as a payment on account of the Federal Estate tax."

If it had not been a payment, but was merely a deposit, it would not have prevented the accrual of the penalty for nonpayment when due, nor stopped the running of interest. It was a payment of the amount of tax estimated to be due.

The fact that the Collector put the money in a suspense account to the credit of the executors seems to us immaterial. At the time the Collector received the money there was no charge on his books against plaintiffs against which the remittance might be credited; hence, he merely put it in a suspense account until the amount of plaintiffs' liability could be determined.

The $120,000 was a payment of estate tax, and the statute, therefore, began to run on the day it was paid. Atlantic Oil Producing Co. v. United States, 35 F.Supp. 766, 92 Ct.Cl. 441.

The first claim for refund was not filed until more than three years thereafter. Plaintiffs, therefore, are barred from the recovery of any part of the $120,000.

The second claim for refund was filed within three years of the payment of the $10,497.34, and plaintiffs, therefore, are not barred from recovering such sum if it was in fact an overpayment.

This brings us to the question as to whether or not the plaintiffs are entitled to the deduction of the $25,000 paid in settlement of the claim of Martin Rosenman against the estate.

Martin Rosenman claimed that the decedent, his father, had given him $167,000 worth of securities during his lifetime, which the executors had taken and had treated as a part of the decedent's estate. These securities were found in two of decedent's lock boxes, to one of which Martin Rosenman had access. He claimed that the gift had been completed by delivery during decedent's lifetime and that the securities were in the possession of the decedent only for the purpose of administration for Martin Rosenman's benefit. On February 27, 1934, two months after his father's death, he made demand on the executors for the delivery of the securities to him, which he said "were held by the deceased for my account." Later, on July 23, 1934, he made demand upon them for the interest, dividends, and proceeds of sales of such securities as had been sold during the lifetime of Louis Rosenman. He said that the deceased had "collected these items and failed to turn them over," but he said that "these items may all be found in the check book of the deceased under my name and in his ledger as well."

At first the executors rejected his claim, but as the result of further negotiations the parties came to an agreement on $25,000, to be paid in full satisfaction of Martin Rosen-

[1] Sec. 810 of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts page 648.

man's claims, subject to the approval of the Surrogate's Court. In the petition filed in the Surrogate's Court asking approval of the compromise, the executors said in part: "The validity of the claim was apparently sustained to some extent by the fact that the decedent caused income tax returns to be prepared for the said claimant Martin Rosenman, reflecting in the same the income from the said securities and the losses resulting from the sales of such of the securities as were sold during the taxable year, which tax return entries could not be explained by a desire of the decedent to minimize income taxes, for the reason that the income returned was exceeded by the loss returned."

So, the executors were of the opinion that there was some evidence to show that the deceased had in fact made a gift during his lifetime to Martin Rosenman.

The Surrogate's Court appointed a special guardian to represent the interests of an infant beneficiary of the estate, and also a special guardian to represent another infant and the unborn and unknown beneficiaries of the estate. In the proceedings before a referee appointed to hear the matter, one of the guardians at first filed a report objecting to the compromise, but later withdrew his objection and agreed to it. The other guardian also agreed to the compromise. After a hearing the referee reported that the compromise was proper and should be approved, and the Surrogate's Court entered a decree accordingly.

The defendant says that Martin Rosenman's claim was based upon a mere promise to make a gift, and therefore, does not constitute a legal claim against the estate. This is manifestly incorrect. Martin Rosenman claimed that a gift had actually been made during the lifetime of the decedent. Upon no other basis could the Surrogate's Court have approved the compromise. If there had been nothing more than a promise to make a gift, Martin Rosenman would not have had any claim against the estate that would have justified the payment of anything. The decree approving the compromise was necessarily based upon the theory that there was some evidence to show that a completed gift had actually been made during decedent's lifetime.

The defendant also says that the claim cannot be allowed because of the provision of the statute that deductions for claims against the estate were limited to such claims as "were contracted bona fide and for an adequate and full consideration in money or money's worth." It says a promise to make a gift is not supported by such consideration, but this argument fails for the same reason stated.

Martin Rosenman claimed, not under a promise, but as the result of a completed transaction. The statute refers to executory contracts, not to executed ones. Martin Rosenman's claim was that $167,000 worth of the securities, treated by the executors as a part of the assets of the estate, were not a part of its assets at all, but were his assets, because they had been given to him by the decedent during his lifetime. The judgment of the Surrogate's Court approving the settlement of $25,000 had the effect of excluding from the gross assets of the estate so much of the securities which the executors had been administering.

In neither Glascock v. Commissioner, 4 Cir., 104 F.2d 475, nor United States v. Mitchell, 7 Cir., 74 F.2d 571, nor Latty v. Commissioner, 6 Cir., 62 F.2d 952, relied on by defendant, was it claimed that there had been a fully consummated gift during the lifetime of the decedent.

The plaintiffs are entitled to recover, but the entry of judgment will be suspended until the filing of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report from a commissioner, showing the amount due, computed in accordance with this opinion. It is so ordered.

MADDEN and LITTLETON, Judges, concur.

JONES, Judge, and WHALEY, Chief Justice, took no part in the decision of this case.