HANLEY v. UNITED STATES.

No. 45644.

Court of Claims.

Nov. 5, 1945.

Donald V. Hunter, of Washington, D. C. (Frederick O. Graves and Miller & Chevalier, all of Washington, D. C., on the briefs), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff is the administrator of the estate of William G. Potts, a resident of the State of Florida, who died on September 3, 1937. He sues (1) for interest on an overpayment of estate taxes; and (2) for refund of taxes paid on an alleged excessive assessment of estate taxes resulting from an undervaluation of the remainder interest in a trust which had been devised to Loyola University of Chicago, which was an educational institution, gifts to which are deductible in determining the net estate.

■ The estate tax return was due to be filed on December 3, 1938, but an extension of time was requested and granted until January 3, 1939. Notwithstanding the extension, however, plaintiff was required to pay the taxes estimated to be due, and he, accordingly, remitted the sum of $220,-000. This amount was in excess of the taxes finally determined to be due. The excess was refunded, but the Commissioner of Internal Revenue declined to pay interest thereon.

Following our decision in Atlantic Oil Producing Co. v. United States, 92 Ct.Cl. 441, 35 F.Supp. 766, we held in Rosenman et al., Ex'rs, v. United States, 101 Ct.Cl. 437, 53 F.Supp. 722, that such a remittance was an "overpayment" as that word was used in the Internal Revenue Code, and that the taxpayer was entitled to interest thereon. We were reversed by the Supreme Court, 323 U.S. 658, 65 S.Ct. 536, but in that case the Supreme Court stated that it was unnecessary to give consideration to the effect of the Current Tax Payment Act of 1943, 57 Stat. 126. Sec. 4(d) of this Act, 57 Stat. 140, 26 U.S.C.A. Int.Rev. Acts, provides:

"Section 3770 of the Internal Revenue Code * * * is amended by inserting at the end thereof the following:

"* * * An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

It thus appears that Congress intended to use the word "overpayment" in section 3770 in the sense we understood it to have been used when we rendered our opinion in the two above-styled cases, and the parties now agree that under this amendment this plaintiff is entitled to the interest he claims.

The undervaluation of the remainder interest bequeathed to Loyola University arises in this way: The decedent had created a revocable trust, in which his wife had a life estate, with the remainder to Loyola University. The parties agree that the property included in the trust should be included in the decedent's gross estate, and that the value of the remainder to Loyola University should be deducted therefrom in computing the net estate, since gifts to this educational institution were deductible under the law. The controversy is over the value of this remainder.

The Commissioner of Internal Revenue computed its value in accordance with articles 10 and 44 of Regulations 80, 1937 edition. Article 44 provides that the value of a life estate and of the remainder interest is to be ascertained in accordance with the rule laid down in article 10. This article provides in part:

"(3) All other future payments are to be discounted upon the basis of compound interest at the rate of 4 percent a year. If the time of payment or of payments is dependent upon the continuation of, or upon the termination of a life or of lives, the Actuaries' or Combined Experience Table of Mortality, as extended, and established actuarial principles are to be used in the computation of the present worth. For the purpose of the computation the age of a person is to be taken as the age of that person at his nearest birthday. Table A, a part of this article, gives factors applicable to a case in which only one life is involved. * * *"

Table A, to which article 10 refers, sets out the factors to be used in computing the value of the life estate and of the remainder for various ages. The computation is based upon compound interest at the rate of 4 percent a year. The Commissioner of Internal Revenue computed the value of the remainder interest to Loyola University by using this table. Plaintiff does not complain of his use of the Actuaries' or Combined Experience Table of Mortality, but does complain that a rate of interest of 4 percent is too high.

■ It is agreed that the value of the corpus of the trust was $1,642,937.70, but since the University's remainder interest was subject to the life estate of decedent's widow, the present value of the remainder interest is the value of the property transferred, reduced by the value of the life estate which precedes it. The value of this life estate, of course, is to be determined by the annual income to be derived from it and the length of time it is expected to continue. If the annual return is 6 percent, of course the life estate is much more valuable than if the annual return was 3 percent. Now the plaintiff says that the annual return to be expected from this life estate was 2.8073 percent, and that, therefore, the use of 4 percent in determining its value was necessarily erroneous. The Commissioner, on the other hand, contends that his Regulation had the force and effect of law and that, therefore, the computa-

tion of the value of the life estate in accordance with the table referred to in these Regulations was proper.

We think the plaintiff is correct in saying that the use of this table is unauthorized and improper whenever its use produces a result substantially at variance with the facts. Indeed, we think that the Regulations themselves recognize this. Article 44 in its concluding sentence reads as follows: " * * * If the present worth of a remainder bequeathed for a charitable use is dependent upon the termination of more than one life *or in any other manner rendering inapplicable Table A or B of articles 10,* the claim for the deduction must be supported by a full statement, in duplicate, of the computation of the present worth made, in accordance with the principles set forth in article 10, by one skilled in actuarial computations. [Italics ours.]"

If the rate of interest used in Table A is substantially out of line with the rate of interest to be expected from the life estate, then article 10 and the computation set forth in Table A are "inapplicable" to the situation. The Act permits the deduction of the value of bequests to educational institutions. This value, as we have said, is to be determined by deducting from the value of the corpus the value of the life estate, and one basis for the determination of the value of this life estate is, of course, the annual income to be derived from it. If the annual income to be derived from it is substantially more or less than 4 percent, then, of course, article 44 is "inapplicable" to the situation.

▆▆ We do not think that article 44 directed the use of Table A in all cases, nor do we think it would have been valid if it had. It is only those Regulations of the Treasury Department which are reasonably adapted to the enforcement of an Act of Congress that have the force and effect of law. A regulation that produces a result different from that intended by Congress has no validity. Helvering v. Sabine Transportation Co., 318 U.S. 306, 63 S.Ct. 569, 87 L.Ed. 773; Helvering v. Credit Alliance Corporation, 316 U.S. 107, 113, 62 S.Ct. 989, 86 L.Ed. 1307.

By the use of Table A the Commissioner of Internal Revenue determined that the value of the remainder interest was $806,838.67. The plaintiff says that if the rate of interest which it was reasonable to expect from the property had been used, instead of the rate of 4 percent, the value of

the remainder interest would not have been $806,838.67, but $987,240. This is a difference of $180,401.33. If the use of Table A results in so great an error, then of course it is "inapplicable" to the situation and cannot be used.

The Commissioner himself has heretofore recognized the inapplicability of this table in certain cases on account of the rate of interest used. In computing the value of the reversionary interest in the estate of Milton Sills, the Commissioner used a rate of 5 percent, instead of the 4 percent used in Table A. This was contested by the taxpayer before the Board of Tax Appeals, but that Board approved the action of the Commissioner. Security-First National Bank of Los Angeles, Ex'r of Estate of Sills, 35 B.T.A. 815.

In the case of Korn et al. v. Commissioner of Internal Revenue, 35 B.T.A. 1071, 1078, the Board said: " * * * It is recognized by the Commissioner, frequently, that the rate of 4 percent compounded may not always be a proper rate and the factor is adjusted to adopt another rate of interest if the facts show justification."

Randolph Paul, in section 18.19 of "Federal Estate and Gift Taxation," says:

" * * * The earning power of money shifts from time to time, and is certainly less than 4 percent today for money safely invested. The door has been opened by the Treasury and the Board to the use of another rate if the facts show justification. But the facts of a case must specifically warrant an abandonment of the 4 percent rate. * * *

"It is, therefore, manifest that there is nothing sacred about the 4 percent rate used in the Treasury tables. * * * "

In the case of Simpson v. United States, 252 U.S. 547, 40 S.Ct. 367, 368, 64 L.Ed. 709, affirming our judgment reported in 53 Ct.Cl. 640, the Supreme Court approved the use of such a table as Table A only because it appeared at that time that 4 percent "was very generally assumed to be the fair value of earning power of money safely invested."

▆▆ We think it has been satisfactorily demonstrated that the rate of interest to be derived by the life tenant under this trust was substantially lower than 4 percent. At the date of the death of the decedent $1,263,362.80 of the trust corpus was invested in municipal and government bonds. These bonds provided for a yield of 2.8028

percent. The balance making up the total of $1,642,937.70 was invested in industrial utility and railroad bonds, corporate stocks, cash, and miscellaneous items. The industrial, utility and railroad bonds yielded 3.889 percent; the corporate stocks yielded 5.1244 percent. The average annual yield on all the corpus was 3.09 percent.

The plaintiff, however, says that the life estate should be computed on a basis of an annual yield of 2.8073 percent, for the reason that the trust provided that as any assets in the trust were reduced to cash their proceeds must be invested in municipal and government bonds and that, therefore, the return to be expected was the return yielded by these securities. However, the trustees were not compelled, prior to their maturity, to reduce to cash the assets of the trust other than municipal and government bonds, and whether or not they would have done so no one knew at the time of decedent's death. We think the value of the life estate must be determined according to the situation as it was at the time decedent died. Under that situation an annual yield from the estate of approximately 3 percent could have been expected by the life tenant. Computed on this basis, the value of the remainder interest to Loyola University was $958,991. This was $152,152.33 more than the value placed upon it by the Commissioner of Internal Revenue.

It thus appears that the Commissioner's use of Table A produced a result quite substantially at variance with the facts. We, therefore, hold that the value of the remainder interest of Loyola University was $958,991, and that the estate is entitled to a deduction of this amount.

We have used the rate of 3 percent instead of. the actual return of 3.09 percent, both for convenience and because of the requirement that the assets reduced to cash should be invested in government and municipal bonds, which yielded less than 3 percent.

The other objections raised by the defendant to plaintiff's method of computation have been considered by us, but have been found to be without merit. They are, briefly stated, that plaintiff's actuary took into account the fact that the income was payable to the life beneficiary quarterly, whereas Table A computes the value of the life estate upon the basis of annual payments. We think plaintiff's computation was correct because in accord with the actual facts.

Defendant also says that plaintiff's computation of the value of the remainder is based upon a Florida inheritance tax of $26,736.58, which under the trust instrument is to be deducted from the corpus of the trust, whereas the amount actually paid the State of Florida is $40,495.15. The Florida inheritance tax is 80 percent of the Federal tax. The amount to be deducted from the corpus, therefore, is 80 percent of the Federal estate tax correctly computed. Since the Florida statute of limitations against the filing of claims for refund is suspended during litigation as to the correct amount of the Federal tax. the overpayment of State taxes will be refunded upon demand, and we must assume, of course, that such a demand will be made in due course.

The defendant further says that the plaintiff is entitled to no deduction whatever of the gift to Loyola University since under the terms of the trust instrument the corpus of the trust can be invaded, if it is necessary to do so in order to insure to the life tenant an annual income of $20,000 a year. This contingency, however, is so remote that it must be disregarded in computing the value of the remainder. The annual income from the trust at the time of decedent's death was $50,846.89, of which $35,410.24 was income from municipal and government bonds. It would appear, therefore, that the income from the trust would never fall below $20,000, in the absence of a cataclysm so unexpected as to be excluded from all reasonable estimates of events to come.

Plaintiff is entitled to recover. Judgment will be reserved until the incoming of a stipulation between the parties, or, in the absence of such stipulation, until the incoming of a report by a commissioner of this court showing the correct estate tax liability computed in accordance with this opinion. It is so ordered.

MADDEN, Judge, took no part in the decision of this case.

See order 63 F.Supp. 95.