### READING CO. v. UNITED STATES.
### No. 48800.

United States Court of Claims.

July 9, 1951.

John E. McClure, Washington, D. C. (William I. Woodcock, Jr., Philadelphia, Pa., George L. Updike, and George A. Horkan, Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, Washington, D. C., Theron Lamar Caudle, Asst. Atty. Gen. (Andrew D. Sharpe, Ellis N. Slack, and John A. Rees, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

For the fiscal year ended June 30, 1945, plaintiff was required to file a capital stock tax return on or before July 31, 1945, and to pay the capital stock tax shown to be due thereon upon the basis of the value declared by plaintiff for its capital stock at the rate of $1.25 on each $1,000 of declared value. As shown in finding 2, plaintiff requested of the Collector of Internal Revenue an extension of time for the filing of its capital stock tax return until September 29, 1945, due to the fact that final decision had not been made concerning certain phases of the refinancing that plaintiff had undertaken with respect to a substantial portion of its funded indebtedness, which decision would have an important bearing in the determination of the net results from operations for the calendar year 1945. The value to be declared by plaintiff for its capital stock, for the purpose of the capital stock tax liability, had an important bearing upon its declared value excess profits tax liability under the income tax statutes, based upon its estimated taxable net income for the calendar year 1945. The Collector granted the extension of time requested for the filing of the capital stock tax return to September 29, 1945, within which to file such return and pay the tax "without incurring penalty for delinquent filing." The Collector, however, advised plaintiff that this extension was granted upon the condi-

tion that interest at the rate of 6 percent per annum would have to be paid upon the capital stock tax from July 31, 1945, to the date of payment.

As shown in the findings, the plaintiff in order to avoid payment of interest upon its capital stock tax after July 31, estimated its capital stock tax liability to be $150,000 for the fiscal year and sent the Collector its check for that amount. This estimated capital stock tax was predicated on an estimate made in July 1945 of plaintiff's estimated taxable net income for the calendar year 1945 of $11,425,000 (finding 4).

Had conditions remained unchanged throughout the calendar year 1945 with respect to plaintiff's income tax liability for the calendar year 1945, as plaintiff had estimated with respect thereto in July of that year, the plaintiff's estimate of the capital stock tax which would have been due, would have been the amount of $150,000 paid to the Collector in July; however, as shown in findings 5 and 6, certain events occurred which materially affected the plaintiff's July 1945 estimate of its 1945 taxable net income, as a result of which plaintiff reestimated its 1945 taxable income to be $1,043,000 instead of $11,425,000. As a result of this, and in order to provide for a credit of at least the amount of $1,043,000, and to provide for a margin of safety against the declared value excess profits tax, as provided for in Section 600 of the Internal Revenue Code, 26 U.S.C.A. § 600, plaintiff revised its estimated declared value for its capital stock from $120,000,000 to $40,000,000, thus giving it a credit of 10 percent thereof, $4,000,000, which, at $1.25 a thousand, resulted in a capital stock tax of $50,000.

Upon the filing of the capital stock tax return within the time, as extended, plaintiff filed a claim for refund of $100,000 of the estimated capital stock tax of $150,000, paid in July of that year. The Treasury Department allowed and paid the refund of $100,000 but declined to pay interest thereon as an overpayment under Sections 3770 (c) and 3771(a) and (b)(2) of the Internal Revenue Code, 26 U.S.C.A. §§ 3770(c), 3771(a)(b)(2). The refund schedule was completed December 11, 1945, and the refund check to plaintiff was issued January 7, 1946.

Upon the facts in this case, we are of the opinion that the amount of $150,000 remitted by plaintiff to the Collector on July 31, 1945, constituted a payment in good faith on account of its estimated capital stock tax liability, fairly and reasonably made by plaintiff upon the basis of its estimated income tax taxable net income for the calendar year 1945, and that plaintiff is entitled to interest under our decision in R. Emmett Hanley, Administrator, v. United States, 63 F.Supp. 73, 105 Ct.Cl. 638, upon the excess payment of $100,000, shown to be due in respect of the capital stock tax liability when the return was filed September 29, 1945.

The defendant appears to view the payment by plaintiff of $150,000 estimated capital stock tax in July 1945, solely from the standpoint of the capital stock tax return showing a declared value by plaintiff for its capital stock, but the plaintiff had the right when it filed its capital stock tax return in September 1945, to take into consideration factors affecting its income tax taxable net income which differed materially from those existing in July 1945, when it estimated the value it intended to declare for its capital stock. By September 1945, plaintiff's estimate as to the amount of its income tax taxable net income for the calendar year 1945 was much less than the estimate made in July of that year. In these circumstances, we think the remittance by the plaintiff to the Collector, in July 1945, constituted a bona fide payment on account of capital stock tax within the meaning of Sections 3770 and 3771 of the Internal Revenue Code, supra, and that it is entitled, under those Sections, to interest on the overpayment of $100,000, subsequently refunded.

The Conference Report, U.S. Code Cong. Service, 78th Cong., 1st Sess., p. 262,[1] relating to Section 3770(c), U.S. Code, added by the Current Tax Payment Act of 1943, stated that the Section was being enacted because some decisions holding that remittances not made incident to a bona fide and

1. House Conference Report No. 10, 78th Cong., 1st Sess., p. 48.

orderly discharge of the taxpayers' actual or reasonably apparent duties had been read by some as meaning that no tax payment resulted if no tax liability actually existed. The Conference Committees considered such a reading as not a correct interpretation of existing law except in those cases where taxpayers merely dumped money as taxes on the Collector by disorderly remittances to him of amounts not computed in pursuance of the actual or reasonably apparent requirement of the Internal Revenue statutes, or not transmitted in accordance with the procedures set up by the statutes, or by other abuses of orderly tax administration. Upon the facts in this case, we find that the remittance by plaintiff of the $150,000, in July 1945, was made incident to a bona fide and orderly discharge of plaintiff's reasonably apparent duties in connection with plaintiff's estimate made in good faith at the time, as to what its capital stock tax liability would probably be.

Judgment for the amount of interest due will be entered upon the filing by the parties of a computation showing the exact amount thereof. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.