**Morris MOSKOWITZ**

v.

**UNITED STATES.**

No. 22–54.

United States Court of Claims.
Jan. 18, 1961.

Julius Kuschner, New York City, Philip A. Brenner, New York City, on the briefs, for plaintiff.

Harold S. Larsen, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and Lyle M. Turner, Washington, D. C., were on the briefs, for defendant.

## 452

DURFEE, Judge.

The plaintiff, an individual taxpayer, seeks to recover the difference between income taxes, interest, and penalties for the calendar years 1941, 1942, and 1943 paid under a deficiency assessment and an amount claimed to be an offer of settlement accepted by the Collector of Internal Revenue. Briefly stated, the facts are these: following an examination of plaintiff's income tax returns for 1941, 1942, and 1943, by the Bureau of Internal Revenue, he was informed, because of his failure to report certain items of income, of proposed additional taxes and penalties in excess of $77,000. On September 7, 1945, the taxpayer's attorney personally delivered to an official of the Bureau of Internal Revenue a letter (more fully set out in Finding 5) * entitled "Offer of Settlement." It contained plaintiff's own computations of his additional tax liabilities, penalties, and interest for the years 1941, 1942, and 1943 and offered to pay $41,266.32 in full settlement of these items. A check for that amount was enclosed.

At the time of the tender of this offer of compromise and at the time of the receipt of the proceeds by the Collector, no statutory deficiency notices had been issued the taxpayer for the years 1941, 1942, and 1943. The check was received at the Office of the Collector of Internal Revenue, Second District of New York, which office caused the check to be certified by the drawee bank on September 24, 1945. The following day it was deposited at the Federal Reserve Bank to the credit of the Treasurer of the United States. However, instead of being recorded on the Collector's books as an internal revenue collection, the proceeds of the check were entered in a special deposit account maintained for sums received or collected other than internal revenue collections, including sums offered by taxpayers in compromise of tax liabilities.

Several months later, the plaintiff's attorney wrote to the Department of Justice advancing arguments to support his contention that the Government, by certifying, collecting and retaining the proceeds of the check as tendered, had accepted a settlement of plaintiff's tax liabilities for the years in question. The Department of Justice did not agree that there had been a settlement and it pointed out that the proceeds of the check always had been and still were refundable upon demand. In February of 1949, the Commissioner of Internal Revenue notified the plaintiff that his offer of compromise had been considered and rejected. In April, plaintiff was informed of proposed adjustments in his tax liabilities

---

* "5. Under date of August 31, 1945, plaintiff's attorney addressed a letter to the Commissioner, Bureau of Internal Revenue, Washington 25, D.C., reading in pertinent part as follows:

"'Offer of Settlement
Re: Morris Moskowitz, New York, N.Y.,
    Symbols GC:P:WPB—399416
Sir:
"We respectfully submit for your consideration the following offer of settlement of the above-named case, based on the reasons cited which we believe will merit your approval as fair and reasonable to all concerned.

"'This offer is made without prejudice to the rights of the taxpayer, and with the understanding that, pursuant to the established procedure of your Bureau, it will not be used in any way against the taxpayer except as a basis for settlement according to its terms.

"'In accordance with the terms of this offer, there is enclosed herewith check of taxpayer in the amount of $41,266.32.

\*     \*     \*     \*     \*     \*

"'Accordingly, for the purpose of settlement of all of taxpayer's income tax liabilities to the Government, both civil and criminal, for the years 1941, 1942 and 1943, the taxpayer hereby offers to pay the amount of $37,866.32 tax deficiencies and penalties, together with 6% interest on the deficiencies to August 31, 1945 in the amount of $3,400.00 or a total of $41,266.32. A check in that amount is enclosed herewith.

"'Your favorable consideration is solicited, as it is earnestly believed that the proposed settlement will be to the best interests of all concerned, and will fully meet the demands of justice in this case.

"'May we look forward to an early reply concerning your acceptance of this proposal.'"

and on November 13, 1950, after filing a waiver consenting to assessment of proposed deficiencies, he was assessed the sum of $79,920.77 for the years 1941, 1942 and 1943. That was the first assessment made in this matter.

Following the assessment, the Collector notified plaintiff that he was holding a Treasury check in the amount of $41,266.32 representing "a rejected offer in compromise submitted in lieu of an unpaid tax liability." Plaintiff's attorney replied stating that the check would not be accepted "for the reason that it was [his] understanding that such amount would be credited as of September 19, 1945, to the deficiencies assessed in November 1950." The check was subsequently accepted under protest by the plaintiff, the defendant having computed or paid no interest on the principal amount. Thereafter, the plaintiff paid the amount of the deficiency assessment, interest, and penalties in full. Timely claims for refund were made, the plaintiff at the same time also stating the alternative claim which he makes in this suit, namely, that if the check tendered as an offer of settlement did not effect a compromise, he would be entitled to interest on the proceeds of the check for the period it was held by the defendant.

The plaintiff maintains that a compromise and settlement has the same practical effect as an accord and satisfaction. In this connection it quotes from the New York Court of Appeals opinion in Hudson v. Yonkers Fruit Co., 1932, 258 N.Y. 168, 179 N.E. 373, 80 A.L.R. 1052, to the effect that an accord and satisfaction is arrived at where a conditional tender of payment is retained by the creditor. Silence while retaining the payment, it holds, amounts to an assent to the conditions, inferred in law. Since the payment in this case was tendered before any assessment was made, while the amount in question was unliquidated, plaintiff argues that the alleged acceptance of the settlement offer fully discharged all tax liabilities.

It appears that the plaintiff has overlooked section 3761 of the Internal Revenue Code of 1939, 26 U.S.C. § 3761 (1952 Ed.). That provision permits the Commissioner of Internal Revenue, with the approval of the Secretary, Under Secretary, or Assistant Secretary of the Treasury to compromise civil tax matters. It also provides for the filing of a public record of the details of the compromise settlement. In Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, the Court concluded that Revised Statute, § 3229, the predecessor of section 3761 of the Code, provided the exclusive procedure by which a tax could be compromised. It stated the belief that the Congress did not intend to entrust the final decision on such matters to subordinate Internal Revenue Bureau officials. We think section 3761 sets forth the only machinery for compromising a tax whether or not there has been an assessment or judgment rendering the amount certain.

In view, therefore, of the statutory prescription of an exclusive method for compromising tax liabilities, any theory founded on general concepts of accord and satisfaction cannot be utilized to impute a compromise settlement to the agents of the Government. But even if this statutory hurdle did not block plaintiff's way, as a matter of fact, we do not think that the actions of the Government are consistent with the theory of an acceptance of the offer. The action of the Collector in depositing plaintiff's check in a special account to the credit of the Treasurer was an insignificant, mechanical act dictated by section 3971 of the Code, 26 U.S.C. § 3971 (1952 Ed.) and the regulations promulgated thereunder.[1] That Code section provides that sums offered in compromise under section 3761 are not to be deposited in the same fashion as ordinary internal revenue collections. The regulations prescribe the deposit of compromise offers in special deposit accounts pending a decision as to whether or not the offer will be accepted.

1. Treas.Reg. 12 (1920 Ed.), Arts. 46 and 48, as amended, T.D. 3652, 1924–2 Cum. Bull. 412, as extended T.D. 4885, 1939–1 Cum.Bull. 396.

We do not think that the action of the Collector, taken pursuant to and in conformity with the statute and regulations, can be interpreted as the acceptance of an offer, even if he had the power to so accept.

■ Furthermore, the letter entitled "Offer of Settlement" stated that the offer was tendered soliciting the Commissioner's "favorable consideration." The Department of Justice, responding to plaintiff's first inquiry about the position it would take on the offer, denied that it had yet taken any action on the offer and informed the plaintiff's attorney that the proceeds of the check could be recovered by the plaintiff at any time he desired. On subsequent occasions the Bureau of Internal Revenue rejected plaintiff's position that a settlement had been effected. Plaintiff's final refusal to accept the offer to refund the proceeds of the check was based, not on its earlier position that a settlement had been reached, but rather on its claimed understanding that the check would be applied as a credit against the deficiencies assessed in November 1950. Moreover, we find no indication in the record that the defendant at any time encouraged the plaintiff to believe it would take favorable action on the offer. Under the facts before us there is no basis for claiming that the Government was estopped from assessing a tax deficiency any more than there is for claiming that a compromise within the meaning of the Code became effective.

Nor do we ascribe any greater significance to the Collector's procuring certification of the check in view of the prompt and clear statement to the plaintiff that the proceeds were refundable. We think the Collector was free to implement the regulations in the fashion he considered best without having his actions construed as official sanction of compromise offers.

■ Because of the ready refundability of the proceeds, had plaintiff so desired, we do not feel that the certification of the check adds any force to the alternative claim for interest on the proceeds.

Plaintiff was under no obligation to leave the proceeds in the hands of the Collector, notwithstanding the certification. He could have freed the money and put it to work for him at any time.

Plaintiff's petition and briefs do not refer us to any provision of law which would authorize the computation and payment of interest on the proceeds of the check returned by the Collector. There is, of course, the provision for the payment of interest contained in section 3771 of the Code, 26 U.S.C. § 3771 (1952 Ed.). However, that interest is payable on overpayments of an internal revenue tax. If the check deposited and held by the Collector did not represent an overpayment, the plaintiff has no right to interest under section 3771.

■ We do not see how the tendered check can be considered an overpayment. Our reason for so saying is not merely the absence of any tax liability at the time of the payment. That fact alone cannot negate an overpayment and section 3770(c) of the Code, 26 U.S.C. § 3770 (c) (1952 Ed.), so specifies. However, in Rosenman v. United States, 1944, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 where the Supreme Court was faced with the question of when the period of limitations on refund claims begins to run, the Court said that prior to a deficiency assessment there were no taxes erroneously or illegally assessed or collected on which a claim for refund could be based. The view of the Court was that payments made to avoid the accrual of interest and penalties on a prospective liability should be treated as estimated deposits and not payments entitling the taxpayer to interest in the event of their return. The Rosenman case was followed in Manee v. United States, D.C.1951, 97 F.Supp. 993. The same result was reached in Busser v. United States, 3 Cir., 1942, 130 F.2d 537.

To hold that the proceeds of the compromise offer did not represent an overpayment is not inconsistent with our holdings in Hanley v. United States, 1945, 63 F.Supp. 73, 105 Ct.Cl. 638 and Reading Company v. United States, 1951,

98 F.Supp. 598, 120 Ct.Cl. 223. In both of those cases the taxpayer had made bona fide payments of estimated taxes. When the tax liabilities were later determined, they were found to. be less than the amounts deposited and we awarded interest on the sums which were refunded holding that the taxpayers had made overpayments. In this case, the plaintiff made a payment of *less* than the ultimately determined liability *not* for the purpose of depositing an amount against future liability but to attempt to force a settlement on his terms. This amount was returned prior to payment of the assessed deficiency and so, at that time, the Government did not have in its possession an amount in excess of plaintiff's tax liability and there was no overpayment. As previously pointed out, the plaintiff could have recovered his settlement offer at any time and still not have been liable for any sums beyond which he eventually paid.

Since no compromise settlement of plaintiff's tax liability was achieved, the assessment and collection of taxes, interest, and penalties by the defendant was not improper or illegal and the plaintiff's claim for refund must be denied. Since the proceeds of the check could have been refunded to plaintiff at any time upon request and did not represent an overpayment, there is no authority to award interest on the occasion of its return to the taxpayer. Consequently, plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

Plaintiff transmitted his check for $41,-266.32 as an offer in compromise of his entire tax liability. It was not delivered as a payment on account of his tax liability, since it was an offer in settlement of his entire tax liability; and, since this offer was rejected, I do not think plaintiff is entitled to interest on the amount. However, had it been a payment on account of tax liability, I would have grave doubt about the right of the Government to assess plaintiff with interest on the entire deficiency from the due date of the tax to the date of the assessment. While the amount deposited was less than the entire tax liability, and was not, therefore, an overpayment, it may be that in computing the amount of interest owed by plaintiff on the deficiency, credit should be given for the $41,266.32. However, I do not think it is necessary to come to a final conclusion on this question, because it was not a deposit on account of tax liability, but an offer in settlement.