**Barbara D. YOUNG, Executrix Under the last Will and Testament of Ethel H. Director, Deceased**

**v.**

**UNITED STATES of America, Appellant.**

**No. 75–1732.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 20, 1976.

Decided Feb. 11, 1977.

Ann B. Durney, Atty., Tax Div., Dept. of Justice, Washington, D.C., with whom Scott P. Crampton, Asst. Atty. Gen., and Earl J. Silbert, U. S. Atty., Washington, D.C., were on the brief for appellant.

Dexter M. Kohn, Washington, D.C., with whom John F. McCarthy, III, Washington, D.C., was on the brief for appellee.

Before LEVENTHAL and MacKINNON, Circuit Judges, and KAUFMAN,* United States District Judge for the District of Maryland.

Opinion for the Court filed by FRANK A. KAUFMAN, District Judge.

FRANK A. KAUFMAN, District Judge.

The sole question in this case is whether certain payments made by plaintiff as executrix of the estate of Ethel H. Director constituted payments of "claims against" that estate within the meaning of section 2053 of the Internal Revenue Code, 26 U.S.C. § 2053 (section 2053) and a regulation promulgated pursuant thereto, 26 C.F.R. § 20.2053–4 (the Regulation). We hold that they did not.

By his last Will and Testament, Neuman J. Director (Neuman) bequeathed $30,000 to his children and grandchildren, as follows:

(1) $5000 to his daughter, Barbara Young, plaintiff herein;

(2) $5000 to his daughter, Elaine D. Drazin;

(3) $10,000 to Arthur Young and Barbara Young, as trustees for Neuman's grandson, James Young; and

(4) $10,000 to Arthur Young and Barbara Young as trustees for Neuman's grandson, John Young.

Neuman died on July 22, 1967. At that time, most of his assets were owned jointly with his wife, Ethel, and the assets in his probate estate were insufficient to satisfy the four bequests stated in his will.

On December 18, 1967, Ethel filed in the United States District Court for the District of Columbia a petition for letters testamentary under her husband's will. Pursuant to District of Columbia law,[1] in order to obtain said letters testamentary, Ethel was required to execute a bond which, under the statutory probate law of the District of Columbia, could take one of three forms: a "general" bond under D.C. Code § 20–302,[2] a bond for debts only under D.C. Code § 20–303,[3] or a "special" bond or undertaking

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. D.C. Code § 20–301 provides:
   § 20–301. Letters testamentary; oath; corporations
   (a) When a will or codicil respecting real or personal property has been authenticated and admitted to probate, letters testamentary on the will or codicil shall be issued to the executor named therein, if he:
     (1) is legally competent and will accept the trust;
     (2) executes the bond required by section 20–302; and
     (3) takes, subscribes, and files an oath that he will administer the estate of the deceased according to law and will give a just account of his administration when lawfully called to account.
   (b) The conditions of this section as to bond and oath do not apply to corporations authorized under the District of Columbia laws to act as executors.
   Further, D.C. Code § 20–306 provides:
   § 20–306. Failure to qualify; letters of administration with the will annexed
   Where the sole executor named in the will was present at the probate of the will, and does not, within 20 days thereafter, file a bond as required by this subchapter, and

qualify as executor by taking the oath required by section 20–301, letters of administration with the will annexed may be granted as if an executor had not been named.

2. D.C. Code § 20–302 provides:
   § 20–302. Bond of executor
   Before letters testamentary are issued to an executor, other than a local corporation authorized by the laws of the District of Columbia to act as an executor, named in a will or codicil, he shall execute a bond to the United States, with security to be approved by the court, in such penalty as the court requires, with a condition that he will administer according to law and to the will of the testator all his goods, chattels, rights, credits, and the proceeds of all his real estate that may be sold for the payment of his debts or legacies, which, at any time, come to his possession or to the possession of another person for him, and in all other respects faithfully perform the trusts reposed in him.

3. D.C. Code § 20–303 provides:
   § 20–303. Bonds for debts only; removal of executor for waste
   (a) Where a testator, by last will and testament, requests that his executor be not required to give bond for the performance of his duty, the bond required of the executor

under D.C. Code § 20–304.[4] Ethel elected to file a special undertaking pursuant to D.C. Code § 20–304. As a result of that undertaking, Ethel was relieved of the obligation to file an inventory or to render an account, but became personally answerable for all debts and claims against the testator, for all damages which might be recovered against her as executrix, and for the full amount of all legacies bequeathed by the testator.

Ethel was granted letters testamentary on January 23, 1968. On March 8, 1969, prior to paying any of Neuman's four bequests, Ethel died. Thereafter, as executrix of Ethel's estate, plaintiff Barbara Young, Ethel's daughter, satisfied Neuman's four bequests from assets in her mother's estate. Subsequently, plaintiff treated the total of those bequests, that is, $30,000, as federal estate tax deductions from her mother's gross estate, on the ground that they constituted "claims against the estate" of her mother within the meaning of section 2053(a)(3). After that claim of deduction was disallowed by the Internal Revenue Service, plaintiff paid the additional tax assessed as a result of that disallowance and instituted an action for refund in the United States District Court for the District of Columbia. That Court granted plaintiffs' summary judgment motion. *Young v. United States,* 388 F.Supp. 809 (D.D.C.1975), and in so doing, noted (at 810):

> * * * Had decedent obtained a general bond in the District of Columbia probate proceedings, the bequests [in Neuman's will] would have lapsed because of insufficient assets in the husband's estate unless she honored them out of her husband's assets which passed outside the probate estate. * * *

This appeal by the Government followed. Section 2053 provides, in pertinent part:

shall be in such penalty as the court considers sufficient to secure the payment of the debts due by the testator, of not more than double the value of the personal estate. Where the bond is less than this sum the court may increase it to require an additional bond if the court deems the bond as given to be insufficient to secure the payment of the debts of the testator.

(b) If a party interested makes it appear to the court that an executor who has given a bond only as is provided for by this section is wasting the assets of the estate, or that the assets are in danger of being lost, wasted, or misappropriated, the court may remove the executor or require him to give additional bond with security in a penalty sufficient to secure the interests of all the creditors, distributees, and legatees entitled to take the estate. On his failure to give bond as required, his letters may be revoked and he shall deliver forthwith to the substituted executor all the assets of his testator in his possession or under his control.

4. D.C. Code § 20–304 provides:

§ 20–304. Special bond of executor

(a) When the executor is the residuary legatee of the personal estate of the testator, or if the residuary legatee of full age notifies his consent to the court, he may, instead of the bond prescribed by section 20–302 or 20–303, give bond with security approved by the court, in a penalty prescribed by the court, conditioned to pay all the debts and just claims against the testator, all damages which may be recovered against him as executor, and all legacies bequeathed by the will. In this case, he may not be required to file an inventory or render an account.

(b) If the executor gives a special bond as provided by this section, he is personally answerable for the full amount of all debts, claims, and damages that may be recovered against him as executor as if he were sued in his own right, and a legatee may recover the full amount of his legacy in a suit on the executor's bond, and the giving of the bond shall be considered an assent to the legacy. The sureties on the bond are not liable for a greater amount than the penalty thereof. The terms "bond" and "undertaking" are defined as follows by D.C. Code § 28–2501:

A bond, when required by or referred to in this Code, means an obligation in a certain sum or penalty, subject to a condition, on breach of which it is to become absolute and enforceable by action.

An undertaking means an agreement entered into by a party to a suit or proceeding, with or without sureties, upon which a judgment or decree may be rendered in the same suit or proceeding against the party and his sureties, if any, the parties and sureties submitting themselves to the jurisdiction of the court for that purpose.

The parties appear in full agreement that although a bond and an undertaking may differ in form, the purpose and effect of each are essentially identical, and that any technical differences between the two are not of significance in this appeal.

§ 2053. *Expenses, indebtedness, and taxes*

(a) General Rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate, and

    (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the law of the jurisdiction, whether within or without the United States, under which the estate is being administered.

\*     \*     \*     \*     \*     \*

(c) Limitations.—

    (1) Limitations applicable to subsections (a) and (b).—

    (A) Consideration for claims.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth;

except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest.

\*     \*     \*     \*     \*     \*

The IRS Regulation, pertaining to that section of the law, provides:

§ 20.2053–4 Deduction for claims against the estate; in general.

The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had secured at the time of death. Only interest accrued at the date of the decedent's death is allowable even though the executor elects the alternate valuation method under section 2032. Only claims enforceable against the decedent's estate may be deducted. Except as otherwise provided in § 20.2053–5 with respect to pledges or subscriptions, section 2053(c)(1)(A) provides that the allowance of a deduction for a claim founded upon a promise or agreement is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth. See § 20.2043–1. Liabilities imposed by law or arising out of torts are deductible.

The Government agrees that the payment of the bequests was properly credited and allowed as a payment of debts of Ethel, insofar as the probate law of the District of Columbia is concerned. The Government contends, however, that the claim is not deductible for federal estate tax purposes because the bequests were not contracted "for an adequate and full consideration in money or money's worth" as those words are used in 26 U.S.C. § 2053(c)(1)(A), and because they do not constitute "[l]iabilities imposed by law" within the meaning of the last sentence of the Regulation. The Court below rejected the Government's construction of section 2053, concluding that the consideration requirements of section 2053(c)(1)(A) are inapplicable and that the claims against Ethel's estate constitute "[l]iabilities imposed by law" within the meaning of the Regulation. In so doing, the District Court wrote (at 811–12) that "the regulation makes no distinction between liabilities assumed voluntarily and those assumed involuntarily", and does not "require that the liability must be imposed by law at the time the liability is undertaken." While the issue would seem to be one, as the Court below has stated, (at 810)

of "first impression", this Court is unable to agree with the District Court's ultimate conclusion.

■ The legislative history of section 2053 supports the conclusion that "[l]iabilities imposed by law", as that phrase is utilized in the Regulation, refers only to liabilities *other* than those founded upon a promise or agreement, and that *all* claims against an estate founded upon a promise or agreement must be supported by full and adequate consideration. In *Taft v. Commissioner,* 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393 (1938), holding, *inter alia,* that promises to pay money to charitable institutions, made by a decedent before her death, and enforceable against her estate under Ohio law, did not constitute claims for an adequate and full consideration "in money or money's worth", Mr. Justice Roberts wrote (at 356, 58 S.Ct. at 894), in the course of reviewing the legislative history of the statutory predecessor to section 2053:

> * * * The Revenue Act of 1916 permitted the deduction of the amount of claims against the estate "allowed by the laws of the jurisdiction * * * under which the estate is being administered." The Acts of 1918 and 1921 contain like provisions. Under these Acts the claims in question would have been deductible as enforceable by state law irrespective of the nature of the consideration. The Act of 1924 altered existing law and authorized the deduction of claims against an estate only to the extent that they were "incurred or contracted bona fide and for a fair consideration in money or money's worth." Congress had reason to think that the phrase "fair consideration" would be held to comprehend an instance of a promise which was honest, reasonable, and free from suspicion whether or not the consideration for it was, strictly speaking, adequate. The words "adequate and full consideration" were substituted by § 303(a)(1) of the Act of 1926. There must have been some reason for these successive changes. It seems evident that the purpose was to narrow the class of deductible claims * * *.
> [Footnotes omitted.]

The phrase "when founded upon a promise or agreement", surrounded by commas, was added to the Internal Revenue Code in 1932. In 4 J. Mertens, Law of Federal Gift & Estate Taxation (1959 ed.), the author notes (§ 26.02 at p. 9 n. 9):

> * * * The consideration requirement, as originally added by Sec. 303(a)(1) of the 1924 Act, stated that the obligation must be "incurred or contracted bona fide and for a fair consideration in money or money's worth." The 1926 Act, Sec. 303(a)(1), changed the wording to read "bona fide and for an adequate and full consideration".

Section 805 of the 1932 Act added the words "when founded upon a promise or agreement". Sen.Rep.No. 665, 72d Cong., 1st Sess., p. 51, explaining Sec. 805, states:

> "This amendment, with one exception, merely clarifies the existing law so far as it relates to an important group of deductions allowable in computing the net estate subject to estate tax. The principal changes made are:
>
> " . . . .
>
> "(4) A clarifying provision limited the requirement of an adequate and full consideration in money or money's worth to liabilities founded on contract. The existing law might be open to a construction under which no claim against the estate would be deductible unless supported by an 'adequate and full consideration in money or money's worth,' but the real intent could hardly have been to deny the deduction of liabilities imposed by law or arising out of torts, and the amendment whereby the requirement of a consideration applies only where the liability is founded on contract is designed to clear up any doubt which may be thought to exist."

\* \* \* \* \* \*

*See also Bank of New York v. United States,* 526 F.2d 1012, 1018 n. 15 (3d Cir. 1975), discussed at some length *infra.*

■ The present case is simply this. The husband's estate did not have enough assets

to pay bequests to the children and grand-children. The wife-executrix made a voluntary promise to pay them. This was rooted in moral, but not money's worth, consideration. This promise to make a gift became enforceable under District law because it was cast in the form of a "special" bond undertaking to pay bequests. This has no more significance, so far as Federal tax law is concerned, than if it were made under seal and the state law made promises under seal enforceable even in the absence of consideration.

Ethel's obligation to pay Neuman's bequests became enforceable against her only after she filed the special undertaking under D.C. Code § 20–304 and only because she voluntarily chose so to do. Had Ethel instead chosen to file a general bond or undertaking or a "debts only" bond or undertaking, she would have been under no obligation to pay Neuman's bequests. While Ethel was required under the probate laws of the District of Columbia to file some form of bond or undertaking in order to obtain letters testamentary under her husband's will, her "obligation" to pay the claims incurred under her special undertaking is quite unlike other liabilities "imposed by law" which have been held deductible without regard to consideration. *See, e. g., Pfeiffer v. United States,* 315 F.Supp. 392, 393–95 (E.D.Cal.1970). Therein, the decedent's obligation to support a mentally ill child in a state institution was not voluntarily undertaken.

In *United States v. Stapf,* 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), the will of the testator contained a provision that if his wife chose to take under his will, rather than to retain a half interest in the community property of the husband and wife, the executors of the estate were to pay all of the community debts and administration expenses. In holding that a deduction for the entire community debts was not permissible under the predecessor to present section 2053, Mr. Justice Goldberg wrote (at 130–34, 84 S.Ct. at 257):

* * * The section carefully restricts the deductible amount "in the case of

claims against the estate * * * or any indebtedness * * *, when founded upon a promise or agreement, * * to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * * " Absent such an offset or augmentation of the estate, a testator could disguise transfers as payments in settlement of debts and claims and thus obtain deductions for transmitting gifts. As this requirement suggests, a deduction under § 812(b) should not be predicated solely on the finding that a promise or claim is legally enforceable under the state laws governing the validity of contracts and wills. The claims referred to by the statute are those "claims against" the property of the deceased which are allowed by and enforceable under the laws of the administering State and not those claims created by the deceased's gratuitous assumption of debts attaching to the property of another.

The pertinent Treasury Regulation states that the deductible claims are "such only as represent personal obligations of the decedent * * *." We cannot agree with respondents' contention that the debts chargeable to the wife's community property are "personal obligations" of the decedent within the meaning of the Regulation. It is true, as the Court of Appeals stated, that under Texas law the husband, as manager of the community property, was personally liable for the full amount of community debts. [United States v. Stapf] 309 F.2d 592, 596. His liability for the portion of debts chargeable to his wife's community property was, however, accompanied by a right over against her half of the community. *Ibid.* The basic rule of Texas law is that the community is liable for its debts, and, accordingly, half the debts attach to the wife's community property. Since the will of the decedent cannot be allowed to define what is an "obligation" or a "claim," where, as in this case, the community is solvent, the debts chargeable to the wife's property cannot realistically be deemed "personal obligations" of

the decedent or "claims against" his estate.

The provisions of § 812(b), like those of § 812(e) allowing marital deductions, must be analyzed in light of the congressional purpose of equalizing the incidence of taxation upon couples in common-law and community property jurisdictions. If the deductible "claims" were to include all community debts that might be, in a literal sense, "personal obligations" of the husband as surety, then a married couple in a community property State might readily increase their tax-free estate transfers. For example, by borrowing against the value of the community property and then requiring that his executors pay all community debts, the husband could obtain a tax deduction for what would in effect be a testamentary gift to his wife. That gift might or might not qualify for treatment as a marital deduction, but it certainly was not intended to be made deductible by § 812(b). A contrary interpretation of § 812(b)(3) would, in our opinion, generally tend to create unwarranted tax advantages for couples in community property States.

\* \* \* \* \* \*

The testator's will provided that administration expenses, as well as community debts, should be paid entirely out of his half of the community property. The administration expenses totalled $4,073. Under Texas law an allocable share of these costs was chargeable to the surviving spouse's community property. That allocable share was determined to be 35% or $1,426. The issue is whether the executors' payment of the costs attributable to the wife's property are deductible "administration expenses \* \* \* allowed by" the law of the State under § 812(b)(2).

The interpretation of "administration expenses" under § 812(b)(2) involves substantially the same considerations that determine the interpretation of "claims against the estate" under § 812(b)(3). In both instances, the testator, by directing that payment be made of debts chargeable to another or to non-estate property, reduces his net estate and in effect confers a gift or bequest upon another. We believe that the provisions of § 812(b), like those of § 812(e) providing the marital deduction, must be read in light of the general policies of taxing the transmission of wealth at death and of equalizing the tax treatment of couples in common-law and in community property jurisdictions. We hold, therefore, that a deduction may not be allowed for administration costs chargeable to the surviving spouse's community property. [Footnotes omitted.]

In *Bank of New York v. United States,* 526 F.2d at 1014, *supra,* Judge Adams held that the cost to an estate of settling a claim advanced in a "vigorously contested" lawsuit brought by third-party donee beneficiaries and grounded on an alleged breach of a contract between friendly spouses to make mutual and reciprocal wills did not qualify as a deductible claim under section 2053. In so holding, Judge Adams wrote (at 1016–17):

One purpose of the consideration provisions of section 2053 is to prevent the depletion of the estate for estate tax purposes by transfers couched in contractual form but serving a donative intent. Transactions among members of a family have been particularly subject to scrutiny in this regard, even when they have been supported by monetary consideration. Although there are no cases squarely on point, an examination of the decisions, including those in cognate areas of tax law, permits the inference that the value of the claim settled by the estate may not be deducted if the agreement on which the claim was based was not bargained at arm's length.

The authorities upholding the deductibility of claims against the estate appear to involve the sort of agreements that arise between parties separated by divergent interests. The clearest cases are those like *Beecher v. United States,* [280 F.2d 202 (3d Cir.)] which deal with settle-

ments between estranged spouses. It is reasonable to assume that each element of the agreement in such situations contains advantages bargained for by concessions on other matters, so that the final accord reflects a trade-off between the rights of each party. Even a family agreement, although achieved without apparent bitterness, has been regarded as bargained for when members of the family had interests contrary to those of other members of the family. Where legal rights of family members are in conflict, each member may have to surrender rights he would otherwise keep in order to secure rights that he wishes to obtain. To classify this sort of family arrangement as an arm's length bargain seems within the compass of reasonableness.

\* \* \* \* \* \*

When the interests of family members are not divergent but coincide so that the elements of a transaction advance the separate concerns of each, we are unable to find the arm's length bargain mandated by the Code. This Court has adhered to the distinction between family arrangements bargained for at arm's length and family arrangements that reflect a community of interests. Tax advantages are not permitted when an agreement between members of a family could be regarded as a cooperative attempt to make a testamentary disposition rather than as an arm's length bargain.

To effectuate the policy underlying the federal estate tax requires that courts look beneath the surface of transactions to discover the essential character of each transfer. Even where a claim is ultimately satisfied by the operation of law, the courts will determine the nature of the claim for federal tax purposes by examining the particular status of the claimant that enabled him to impose his claim on the estate.

\* \* \* \* \* \*

Section 20.2053–4 is itself quite explicit that claims founded on a promise or on an agreement are limited to the extent that the liability was "contracted bona fide and for an adequate and full consideration in money or money's worth," a provision identical to that in the statute. The subsequent sentence, on which the estate would rely, must be taken to refer to claims imposed by law other than those founded on promise or agreement.[15] As such, it is inapposite in the circumstances of this case.

[15] This distinction of obligations arising from promises and agreements and other obligations imposed by law is confirmed by the legislative history of the limitation of section 2053. That limitation was described as a clarifying provision limiting the consideration requirement to "liabilities founded on contract." This was regarded as necessary to avoid the erroneous interpretation that *all* claims, even if imposed by law or arising out of torts, must be supported by adequate and full consideration.

See H.Rep.No. 708, 72d Cong., 1st Sess. 48 (1939) (reprinted in 1939–1 Cum.Bull. (Part 2) 457, 491); S.Rep. No. 669, 72d Cong., 1st Sess. 51 (1939) (reprinted in 1939–1 Cum.Bull. (Part 2) 496, 933).

[526 F.2d at 1016–18, *supra* (all footnotes except n. 15 omitted).]

Appellee asserts that numerous courts have permitted estate tax deductions for claims based upon a decedent's promise or agreement in which the decedent seemingly received no consideration in money or money's worth in return for the same. None of the authorities cited by appellee, however, appear controlling herein.

In the first place, such authorities as *Estate of Park v. Commissioner of Internal Revenue*, 475 F.2d 673 (6th Cir. 1973) and *Ballance v. United States*, 347 F.2d 419 (7th Cir. 1965) involved the deductibility of administration expenses which, by the explicit terms of section 2053(a)(2), are deductible without regard to the same consideration requirements which are imposed by section 2053(c)(1)(A) as to claims against an estate under section 2053(a)(3). *See Commercial National Bank v. United States*, 196 F.2d 182 (4th Cir. 1952).

Other authorities relied upon by appellee involve claims against an estate based upon a decedent's guaranty or indemnity agreement. In such cases, although the decedent may not have supplied consideration for the

claim in question, some legal consideration nonetheless moved from the claimant to the primary debtor or obligor for whose undertaking the decedent assumed conditioned liability. *See Carney v. Benz,* 90 F.2d 747, 749 (1st Cir. 1937). It should also be noted, that even claims against an estate founded upon a guaranty or indemnity agreement may not be deductible in a case in which "it appears that the guarantor intended to make a disguised gift to the debtor in the form of a guaranty." *See Bank of New York, supra,* 526 F.2d at 1017 n. 7. Such a situation might arise, for example, if a guarantor reserved no recourse over against the principal to the transaction in question or possessed no reasonable expectation of reimbursement. *See* the discussions in *Commissioner of Internal Revenue v. Porter,* 92 F.2d 426, 428 (2d Cir. 1937) (Swan, J.) and in *Dodge v. Gagne,* 23 F.Supp. 729 (D.N.H.1938).

Nor does *Rosenman v. United States,* 53 F.Supp. 722, 101 Ct.Cl. 437 (1944), reversed with regard to another matter not connected with the issue herein, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), support the deduction claimed herein. Therein, the Court concluded that the origin of the claimed deduction was a gift to the decedent's son which had been fully consummated during the lifetime of decedent. No such consummated gift took place in this case.

In sum, the applicable statute, Regulation and cases require full and adequate consideration to support the claimed deduction. Appellee, while contending for the negative of that proposition, further urges that even if that is so, Ethel received full and adequate consideration in exchange for her special undertaking. Appellee reasons that in return for Ethel's filing of a special undertaking, she was relieved of the obligation of either filing an inventory or of rendering an account of her husband's estate. However, appellee's counsel conceded in the course of oral argument in this Court that any administrative expenses which might have been incurred in connection with the filing of an inventory or the rendering of an account under a general bond or under-taking would have been chargeable to Neuman's estate, rather than to Ethel as an individual. Accordingly, Ethel did not receive full and adequate consideration for her undertaking. Under the circumstances, since there was no such consideration received by Ethel, it is not necessary for this Court to reach the question of whether consideration in exchange for a payment of a claim by an estate must have proceeded from the persons receiving such payments to the decedent in order for the claims to qualify as deductions under section 2053. *See Bank of New York,* 526 F.2d at 1015, *supra* (in which Judge Adams determined that it was not necessary to address that question); *Carney v. Benz,* 90 F.2d at 749, *supra* and cases cited thereat; C. Lowndes, R. Kramer & J. McCord, Federal Estate and Gift Taxes (1974 ed.), § 14.6 at pp. 358–59.

The Court below wrote (388 F.Supp. *supra* at 812) that "[t]here is nothing in decedent's choice of a special bond, nor anything else in the record, that smacks of tax avoidance." The Government has not taken issue with that statement. Nonetheless, the Government has strenuously argued that a decision by this Court upholding the claimed deduction would create substantial opportunities for tax avoidance. The Government reasons that had Ethel paid Neuman's bequests during her lifetime, she would have been required to pay gift tax and that if the deduction sought herein by Ethel's estate is allowed, what amounts in fact to gifts in Ethel's name will have entirely escaped taxation. Be that as it may, for the reasons discussed *supra,* the deductions in question in this case do not qualify under section 2053. Accordingly, the judgment of the District Court is hereby reversed.

*So ordered.*