## SABINE TRANSP. CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10077.

Circuit Court of Appeals, Fifth Circuit.

June 30, 1942.

Rehearing Denied Aug. 13, 1942.

James H. Yeatman, of Houston, Tex., for petitioner.

Arthur A. Armstrong and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Submitted upon stipulation as to the facts,[1] the Board, following its decision in Spokane Dry Goods Co. v. Commissioner,[2] sustained the determination of the Commissioner that in computing its income tax for the taxable year 1938, the taxpayer was not entitled under 27(a) (4),[3] to take a dividends paid credit for the $530,000 used to pay or retire the notes issued in 1937 as dividends paid on its obligation.

Taxpayer is here insisting, that by the plain mandate of the section it is entitled to the credit claimed and that both this and the Spokane case were wrongly decided. The Commissioner, standing on the Spokane case and on the regulation that case approved, insists that the order of the Board was right and must be affirmed. We do not think so. We think it clear; that the Spokane case was wrongly decided by Board and court; that the dissenting opinion of Board member Hill, clearly and correctly stated the law of that case; and that in the Pacific Flush Tank case,[4] the Board while in terms differentiating in effect overruled its prior decision. We agree with what it there said. "The terms of the statute, as applicable to the facts of this case, are so plain, clear, and unambiguous as to require, in our opinion, no resort to construction in order to ascertain its meaning. However, if it could be said that the application of the literal meaning of the statute leads to results which should be avoided, [that is], the granting of a double tax benefit, and that therefore the statute should be construed in the light of the purpose and intent of Congress in enacting same, we nevertheless * * * conclude that, even if the allowance of the credit claimed here would result in duplicating in whole or in part, a tax benefit to the petitioner, it nevertheless appears clear that Congress intended to and did expressly grant such credit. And we further conclude that * * * article 27(a)—3 of Regulations 101 [purporting to deny such credit] is contrary to the statute and is

---

[1] In 1937, taxpayer, a Delaware Corporation having two stockholders, Pure Oil Corporation and Sabine Towing Company, Inc., declared and paid on its outstanding common stock, cash dividends of $30,000, and a further dividend of $530,000 by the issuance and delivery of its 10 year 8% notes. In its federal income and excess profits tax return for 1937 the petitioner reported the cash dividends and the dividends paid in its obligations, and they were allowed as dividends paid credits.* During the tax year, 1938, the year involved in this proceeding, the 10 year dividend notes were paid to its stockholders in cash and in its return for 1938, taxpayer reported these distributions to stockholders and claimed a dividends paid credit, under Sec. 27 (a) (4), Revenue Act

*Section 27 of Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 837:
"Sec. 27. Corporation Credit for Dividends Paid
"(a) Dividends Paid Credit in General. For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.
* * *
"(d) Dividends in Obligations of the Corporation. If a dividend is paid in obligations of the corporation, the amount of the dividends paid credit with respect thereto shall be the face value of the obligations, or their fair market value at the time of the payment, whichever is the lower. * * *"

of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1021, on account of the sums used to pay and retire them. Respondent disallowed the claim and taxpayer brought the matter to the Board.

[2] 43 B.T.A. 793, affirmed 9 Cir., 125 F.2d 865.

[3] "Sec. 27. Corporation dividends paid credit:
"(a) Definition in general.—As used in this title with respect to any taxable year the term 'dividends paid credit' means the sum of: (1) * * * (2) * * * (3) * * * and (4) 'Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness. As used in this paragraph the term 'indebtedness' means only an indebtedness of the corporation existing at the close of business on December 31, 1937, and evidenced by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937, or by a bill of exchange accepted by the corporation prior to, and in existence at, the close of business on such date. Where the indebtedness is for a principal sum, with interest, no credit shall be allowed under this paragraph for amounts used or set aside to pay such interest."

[4] Pacific Flush Tank Co. v. Commissioner, 45 B.T.A. 869.

therefore a nullity as applied to the facts of this case."

 We think it clear that in attempting, by speculating as to what Congress intended to do except as that intent was expressed in the statute, to rationalize out of the section the comprehensive words which specifically grant the deduction, the Commissioner is attempting to have us arrogate to ourselves the function of rewording rather than of construing and applying the statute.[5] The construction of a statute to make it carry out the intent its words import is one thing. The construction of it to bring it nearer to the thought of administrator or court, or of some particular section of public opinion, as to what Congress intended or ought to have intended, or that the law would better serve its purpose if it were drawn that way,[6] is quite another. However, we need not further labor the point here, for in Helvering v. Credit Alliance Corp., April 27, 1942, 62 S.Ct. 989, 992, 86 L.Ed. —, the Supreme Court, rejecting the same kind of reasoning as to a dividends paid credit claimed under Section 27(b) of the Revenue Act of 1936, and declaring invalid a regulation which contravened the plain terms of the statute, has set the matter at rest. Definitely reaffirming the principle that it is for the courts not to write but to enforce a statute, the court said: "But we cannot, as the Government suggests, read into the section, as it stood when the transaction took place, an intent derived from the policy disclosed by the subsequent amendment. We shall not burden this opinion by extended reference to the legislative history of the Act of 1936. It is enough to say that it is inconclusive and, to some extent, supports the arguments of both parties. But whatever may be said of the policy behind the statute's provisions, we are not at liberty to disregard the direct and unambiguous language of subsection (f)." The principal there announced has controlling force here. Congress, for reasons of its own, in working out a compromise or adjustment, of the very controversial questions raised by the policy of, in effect, taxing corporations on dividends unpaid and of allowing them credits on those paid or what was regarded as the equivalent, drew the dividends paid statutes in the terms in which we find them. The taxpayer, conforming to the statute, paid dividends in its obligations in 1937. Still conforming to the statute it paid these obligations in 1938 and claimed the dividends credit the statute allowed, for the payment or retirement of "indebtedness of any kind." It is not for the commissioner or the courts to deny the taxpayer the deduction that Congress has granted him. The order is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

[5] "Courts and administrative agencies are bound to enforce the plain words of the statute although there may be reason to think, in view of the general legislative purpose that some other provision would have met with favor if the Legislature had called it to mind." Commissioner of Internal Revenue v. Windrow, 5 Cir., 89 F.2d 69, 71, 110 A.L.R. 1251.

[6] "A legislative act in the United States is not as in some countries, a mere general outline by a party or group in power, of the purposes it wishes to accomplish, to be expanded, implemented and given effect by its administrators, in accordance with the general purposes of its proponents. A fundamental fact in American political life has always been that in the struggle here for laws as means, to make law as liberator effective, there have always been differing opinions as to the wisdom, propriety and scope of proposed new and controversial laws, and that laws as finally enacted here, are usually the result of a compromise or at least of an adjustment of these conflicting views.

"Because this is and always has been so, it can be usually said of our laws, that the general, not the partial or partisan will, speaks in them. It is because this is so, that canons of statutory interpretation and construction require that statutes must be construed and given effect, in accordance with the language chosen for the expression, of this compromise and adjustment of views, and not in accordance with the purposes or views, of either the proponents or the opponents of the legislation, which have not been given expression in the statute." Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207, at pages 212, 213, affirmed Walling v. A. H. Belo Corp., June 8, 1942, 62 S.Ct. 1223, 86 L.Ed. —.