## HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. SABINE TRANSPORTATION CO., INC.

No. 518. Argued February 4, 1943.—Decided March 1, 1943.

*Mr. Arnold Raum,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, J. Louis Monarch, Arthur A. Armstrong,* and *Valentine Brookes* were on the brief, for petitioner.

*Mr. Chas. I. Francis* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In this case the Circuit Court of Appeals held the respondent entitled to include in its dividends paid credit, pursuant to § 27 [1] of the Revenue Act of 1938, the amount paid to redeem notes given for dividends in a prior year.[2] The Circuit Court of Appeals of the Ninth Circuit had held to the contrary.[3] To resolve the conflict we granted certiorari.

In 1937 the respondent paid dividends, $30,000 in cash and $530,000 in its ten year eight per cent notes. As respects its liability for undistributed profits tax, it claimed and was allowed, pursuant to § 27 (d) of the Revenue Act of 1936,[4] as part of its "dividends paid credit," the face value of the notes. In 1938 the respondent paid off the notes, and in its return for that year claimed the sum paid as a part of its "dividends paid credit" under the Revenue Act of 1938, § 27 (a) (4).[5] The Commissioner's disallowance of the claim was sustained by the Board of

---

[1] Act of May 28, 1938, c. 289, 52 Stat. 447, 468.

[2] 128 F. 2d 945.

[3] *Spokane Dry Goods Co.* v. *Commissioner.* 125 F. 2d 865.

[4] 49 Stat. 1648, 1665.

[5] 52 Stat. 468.

Tax Appeals, but the Circuit Court of Appeals reversed the Board's decision.

The position of the petitioner is that the second credit claimed would duplicate the earlier one allowed and that § 27 of the Revenue Act of 1938 does not permit the duplication.

The Revenue Act of 1936, by § 13, imposed on corporations a tax ranging from eight to fifteen per cent of the so-called "normal-tax net income," consisting of net income less certain permitted deductions. It then laid a graduated surtax on "undistributed net income" which it defined as the adjusted net income (the normal-tax net income after credits) less the so-called "dividends paid credit." By § 27 the Act defined the latter as comprising dividends paid during the taxable year including (27 (d)) dividends in obligations of the company to be reckoned at face value or market value, whichever was lower. The subsection also provided that, if such obligations were redeemed in any subsequent year, the excess of the redemption payment over the fair market value of the obligations as of the date of their issue should be treated as a dividend paid in the year of redemption.

The purpose of these provisions is clear and is a matter of common knowledge. Congress desired to encourage the payment of dividends so that the earnings of corporations might be subjected not only to normal tax as against the corporation, but also to taxation as income to the stockholders.[6] The means adopted was to relieve the corporation from surtax to the extent of dividends paid in cash or

---

[6] It appears that respondent's sole stockholders are two corporations, but we do not understand petitioner to contend that this circumstance affects the operation or application of § 27. It is assumed that these two corporations are bona fide stockholders of respondent and paid taxes on the dividends they received. The section in terms applies to every corporate taxpayer whether it has but two stockholders which are corporations or two thousand who are natural persons.

in obligations. The latter would be taxed to stockholders at their market value. If they were redeemed in a later year, at a figure above such value as of the date of their issue, the excess would be taxed to the holder as income to him in the year of redemption. Fairness dictated that in such case the corporation should have a further dividends paid credit for this excess of value paid by it.

The Revenue Act of 1938 adopted a different plan of corporate taxation. With respect to a corporation having the amount of income earned by the respondent, § 13 imposed a tentative tax of 19% of "adjusted net income," which was the entire net income less certain deductions not here material. This tentative tax was to be reduced by the sum of two deductions. One of these is not in issue here. The other is 2½% of the "dividends paid credit," not however to exceed 2½% of the adjusted net income. The dividends paid credit is defined by § 27. It consists of four items, two of which are carry-overs from previous years, which need not concern us; and two others which are important in this case,—first, the "basic surtax credit," § (a) (1), and, secondly, "amounts used . . . to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness," § (a) (4).[7] Indebtedness is defined as indebtedness existing at the close of business December 31, 1937, and evidenced by bond, note, debenture, certificate of indebtedness, mortgage or deed of trust issued by the corporation and in existence at the close of business December 31, 1937, or a bill of exchange accepted prior to and in existence at that time. The term is further defined as covering principal only and not interest thereon.

The basic surtax credit is the sum of several items, including cash dividends paid and certain other specified

---

[7] No question is made in this case as to the reasonableness of the amount paid.

credits. Dividends in kind are to be valued and treated as cash dividends. Subsection (e) provides that, in computing the basic surtax credit, a dividend paid in obligations of the corporation shall be treated as a cash dividend in the amount of the face value of the obligations or their market value, whichever is lower, and that, if the obligations are redeemed in a subsequent year, any excess paid the holders over the market value at date of issue shall be treated as a dividend paid in that year. This provision, it will be noted, is similar to § 27 (d) of the Revenue Act of 1936. But the credit of which it forms a part differs from that of the earlier Act as it is against the tax and not against income and is limited to $2\frac{1}{2}\%$ of adjusted income. The use of the credit, may, therefore, produce results materially different from the use of the credit granted by the 1936 Act.

The petitioner asserts that Congress did not intend the taxpayer to have two credits as a result of payment of a dividend in its own obligations, that exemptions or credits should be strictly construed as against the taxpayer, and that the regulations promulgated under the Revenue Act of 1938 clearly deny the deduction claimed in this case.

On the face of the 1938 Act the items which go toward making up the basic surtax credit under § 27 (b) are distinct from the credit for indebtedness paid under § 27 (a) (4). Although the note obligations paid by the respondent were issued in payment of dividends for a prior year they, nevertheless, fall within the precise terms of § 27 (a) (4). In this connection § 27 (e) might have application if the redemption of the notes had been at a figure greater than their face or market value at the time they were issued to the stockholders, for in that case § 27 (e) would have permitted the respondent to take a credit for the excess of the redemption price over the value at date of issue as a dividend paid in the current year. But we

think that § 27 (e) does not otherwise bear on a payment such as that in question and does not qualify the plain intent of § 27 (a) (4).

The Congress had in the 1936 Act encouraged the payment of dividends in obligations. It knew that many corporations had done so. With this knowledge it adopted the sweeping language of § 27 (a) (4) of the Act of 1938. As introduced the section spoke only of indebtedness. It was amended by the Senate Finance Committee by adding the words "of any kind" after the word "indebtedness," for the purpose of clarification.[8] These facts, without more, make plain the scope of the provision, and answer the contentions that no credit was intended to be granted for the payment in the taxable year of obligations issued for dividends in a prior year. If more were needed, it should be noted that had the corporation borrowed money in a prior year to pay a dividend, the payment of the debt in a later year would clearly have entitled it to credit for the payment under § 27 (a) (4). There is no reason for assuming that Congress intended to treat the two cases differently, and it has, in plain terms, granted a credit in both.

What has been said respecting § 27 (e) indicates that it does not limit or qualify § 27 (a) (4). It may supplement it in a case where the payment of the obligations issued for dividends is in excess of the market value of those obligations when they were issued. The argument that it is a specific provision, qualifying an earlier general provision of § 27, must be rejected.

It remains to consider the Treasury Regulations promulgated under the 1938 Act.[9] These forbid a credit such as that claimed in this case, calling it a "double credit." We think the regulations are in the teeth of the unambiguous mandate of the statute, are contradictory of its plain

---

[8] Senate Finance Committee Report, S. R. 1242, 75th Cong., 1st Sess.

[9] Regulations 101, Art. 27 (a)–3.

terms, and amount to an attempt to legislate. They cannot prevail to preclude the credit claimed.[10] The Judgment is

*Affirmed.*

MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY concur, dissenting.

The taxpayer, Sabine Transportation Co., Inc., is a Delaware corporation doing business in Texas. Its stock is held in equal amounts by two other corporations, Sabine Towing Co., Inc., and The Pure Oil Corporation. In 1937, a dividend of $530,000.00 was declared, amounting to $35.33⅓ per share on the common stock. The dividend was paid to the two corporate owners by execution of ten year, eight per cent notes. The taxpayer then claimed and was allowed a "dividend paid credit" under the 1936 Act on its 1937 tax. In 1938 the taxpayer paid to its two corporate stockholders the full face value of the ten year notes. It is now given a second "dividends paid credit" under the 1938 Act on its 1938 tax.

This $530,000.00 has left the corporate treasury only once. Bookkeeping devices and paper contrivances should not be permitted to make two payments out of one; and if two deductions are permitted, why not three or more? The possibilities of manipulation of notes, bonds, stocks, and every other cash substitute imaginable, are particularly apparent when, as here, the taxpayer and its stockholders are so closely interrelated. Congress has passed no tax statutes which compel me to conclude that it intended to reward ingenuity in paper work by granting multiple tax reductions for a single money payment to discharge a single corporate obligation.

---

[10] *Helvering* v. *Credit Alliance Corp.*, 316 U. S. 107.