### In re Miguel MEDINA and Vicki Kathleen Medina, Debtors.

**Bankruptcy No. 693–62021–psh11.**

United States Bankruptcy Court, D. Oregon.

Oct. 11, 1994.

---

Penny L. Austin, Medford, OR, for debtors.

Wesley F. McNamara, Sp. Asst. U.S. Atty., Portland, OR, for I.R.S.

Larry C. Hammack, Stark & Hammack, P.C., Medford, OR, for Offord Fin. Co.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

Creditor the United States of America through the Internal Revenue Service (hereafter IRS) has moved the court for relief from the automatic stay to apply certain proceeds arising from contracts entered into between Medina Reforestation and the United States Department of Agriculture (hereafter USDA) to the debtors' tax debt. The IRS has waived its right to a final determination within the time otherwise required by 11 U.S.C. § 362(e). Offord Financing, Inc. (hereafter Offord) is claiming priority to these payments. The debtors in possession do not claim the contract proceeds. In conjunction with this contested matter the creditors stipulate to the following facts:

1. Prepetition the debtors in possession were in the business of reforestation. Reforestation consists of planting and maintaining trees on forest lands. This service was provided under contracts with third parties, primarily the United States Forest Service through the USDA.

2. The debtors are husband and wife. Medina Reforestation is a proprietorship owned solely by Miguel Medina during the periods at issue. Vicki Medina Church Company is a proprietorship owned solely by Vicki Medina during the periods at issue.

3. The Medinas filed their Chapter 11 case on May 17, 1993. On June 25, 1993 the IRS filed a timely proof of claim for $730,120.48.

4. The IRS has on file federal tax liens against the debtors as follows:

| Lien filing Date | Place of Filing | Amount Due on Filing Date | Taxpayer |
| --- | --- | --- | --- |
| 6/15/92 | Oregon Secretary of State | $18,975.08 | Miguel Medina |
| 6/15/92 | Oregon Secretary of State | 11,025.92 | Vicki Medina |
| 6/17/92 | Jackson County Clerk | 18,975.08 | Miguel Medina |
| 6/17/92 | Jackson County Clerk | 11,025.92 | Vicki Medina |
| 1/20/93 | Jackson County Clerk | 21,436.87 | Miguel Medina |

The total amount due and secured by these liens as of the petition date was $47,521.

5. On January 27, 1993 the IRS seized a parcel of real estate owned by the Medinas

located at 6101 Adams Rd., Talent, Oregon. The following liens on the debtors' Talent property are superior to the lien under which the IRS seized the property:

| Lienor | Priority Date | Approximate Balance on January 27, 1993 |
|---|---|---|
| Trend Colleges, Inc. | 10/10/88 | $ 1,561.65 |
| Southern Oregon Credit | 03/27/91 | 418.00 |
| Service | 07/24/91 | 2,479.57 |
| | 11/14/91 | 4,242.10 |
| Jackson County Tax Warrant | 05/07/91 | 123.33 |
| Jackson County Property Tax | 10/01/92 | 19,981.97 |
| Oregon State Accident | 05/13/91 | 8,374.58 |
| Insurance Fund | 07/19/91 | 51,375.43 |
| Approximate Total of Superior Liens | | $ 88,433.30 |

6. On February 22, 1993 the IRS gave notice of a sealed bid sale on the Talent property. This sale was not consummated due to a Chapter 13 filing by the Medinas. After the Chapter 13 was dismissed, on May 6, 1993 the IRS gave another notice of a sealed bid sale which also was not consummated because of their Chapter 11 filing.

7. After the Medinas dismissed their Chapter 13 filing, on May 3, 1993 the IRS gave notices of levy to the USDA with regard to certain assessed taxes due from the Medinas. The addressees received the notices on May 10, 1993.

8. The Medinas filed their Chapter 11 on May 17, 1993. Before they filed their Chapter 11 petition, Medina Reforestation entered into three separate contracts with the USDA governing tree planting and related reforestation services. The contracts, by number, date of contract and commencement date of work are:

A. 52–8462–3–07007, awarded March 16, 1993. Work commenced on April 26, 1993.

B. 53–9A28–3–1N21, awarded February 3, 1993. Work commenced on April 22, 1993.

C. 43–8462–3–1073, awarded March 16, 1993. Work commenced and completed after May 16, 1993.

9. On April 7, 1993 Offord entered into a financing, assignment and security agreement with "Vicki Kathleen or Miguel Medina dba Medina Reforestation." The security agreement was duly perfected by filing on April 16, 1993.

10. Medina Reforestation assigned to Offord its right to receive proceeds in the contracts described in paragraph 8 A and B above. On May 13, 1993 the USDA received a notice of assignment regarding Contract Number 53–9A28–3–1N21. On May 14, 1993, the USDA received notice of assignment regarding Contract Number 52–8462–3–07007.

11. Pursuant to its agreement with Medina Reforestation, Offord purchased from it certain invoices for work performed on the contract described in paragraph 8 A and B above. The date of the invoices, their amounts, the purchase price paid by Offord to the Medinas, and the current status of the payment on each is:

A. Contract # 52–8462–3–07007:

1. Invoice dated May 6, 1993, in the sum of $19,939.00 for work performed from April 26, 1993 to May 5, 1993.

a. Purchased by Offord on May 14, 1993 for the face amount less 5%, with proceeds paid directly to debtors.

b. Invoice being held by USDA awaiting this Court's order concerning disposition.

B. Contract # 53–9A28–3–1N21:

1. Invoice dated April 19, 1993, in the sum of $11,701.72 for work performed from April 12, 1993 to April 19, 1993.

a. Purchased by Offord on April 19, 1993 for the face amount less 5%, purchase proceeds paid directly to debtors.

b. Invoice was paid in the face amount by USDA directly to debtors on May 17, 1993, before it was administratively able to take notice of the bankruptcy.

c. Debtors delivered payment by USDA to Offord after receipt.

2. Invoice dated April 26, 1993, in the sum of $19,449.73 for work performed from April 19, 1993 to April 26, 1993.

a. Purchased by Offord on April 26, 1993 for the face amount less 5%, purchase proceeds paid directly to debtors.

b. USDA paid the face amount of this invoice directly to debtors on or about May 26, 1993, before it was administratively able to take notice of the bankruptcy.

c. Debtors delivered the check that they received to their attorney, Penny Austin, who continues to hold the draft awaiting the Court's order concerning disposition.

3. Invoice dated April 28, 1993, in the sum of $16,805.69 for work performed from April 12, 1993 to April 27, 1993.

a. Purchased by Offord on April 28, 1993 for the face amount less 5%, purchase proceeds paid directly to debtors.

b. Adjustments to this invoice lowered the amount actually received to the sum of $16,179.94.

c. USDA paid the adjusted amount directly to debtors on or about May 28, 1993 before it was administratively able to take notice of the bankruptcy. Debtors delivered this check to their attorney, Penny Austin. Penny Austin presently holds these funds awaiting this Court's order concerning disposition.

4. Invoice dated May 14, 1993, in the sum of $32,056.33 for work performed from April 12, 1993 to May 12, 1993.

a. Purchased by Offord on May 14, 1993 for face amount less 5%, purchase proceeds paid directly to debtors.

b. USDA currently holds these funds awaiting this Court's order concerning disposition.

12. In addition to the foregoing and as it pertains to Contract Number 52–8462–3–07007, Medina Reforestation performed services under that agreement and submitted an invoice dated May 18, 1993, in the sum of $18,899.55, representing work performed from May 10, 1993 to May 16, 1993. This invoice was not purchased by Offord. The USDA has not paid this invoice and the sum is being held by the USDA awaiting this court's order concerning disposition.

13. Invoices generated by Medina Reforestation on the three contracts described above for work performed by the Medinas postpetition are:

A. Contract # 52–8462–3–07007:

I. Invoice dated June 1, 1993 in the sum of $19,545.00.

B. Contract # 53–9A28–1N21:

I. Invoice dated June 10, 1993 in the sum of $1,642.60.

C. Contract # 43–8462–3–1073:

I. Invoice dated June 1, 1993 in the sum of $11,487.50.

These invoices and the invoices described in paragraph 12 were not factored by Offord.

14. The invoices described in paragraph 13 have been paid by the USDA (except for the sum of $850.02 from the invoice dated June 10, 1993) and were used by the debtors as cash collateral pursuant to an order of this court.

15. Medina Reforestation has fully performed its obligation under the contracts described in paragraph 8 above and the invoices described in paragraphs 11, 12, and 13 above cover all payments earned by the debtors under the contracts.

The court makes further findings of fact as follows:

16. The United States' June, 1993 proof of claim since has been amended several times. The latest proof is for $750,491.97. It reflects that the majority of the taxes were assessed for tax years 1988–1992. Offord has filed a timely proof of claim in the amount of $87,661.60.

17. All the USDA contracts contain provisions which allow assignment of the right to be paid amounts due or to become due under the contracts to a bank, trust company, or other financing institution. They do not con-

tain provisions prohibiting setoffs. They were not assigned to more than one party nor further assigned. They did not require posting of a bond.

18. The IRS' Notice of Levy received by the USDA on May 10, 1993 specified the contracts covered by the notice. The contracts at issue here were not specified.

19. On April 12, 1993 Medina Reforestation executed an absolute assignment in favor of Offord of all moneys due or to become due on contract number 53–9A28–3–1N21. At that time payments in the amount of $47,774.45 had already been made to Medina Forestation for work performed on the contract. Offord was to receive the balance due under the contract. On May 14, 1993 Medina Reforestation executed an absolute assignment in favor of Offord of all moneys due or to become due on contract number 52–8462–3–07007. After these assignments Offord began to pay to Medina Forestation 95% of the face of invoices arising under the assigned contracts. Medina Reforestation presented invoices at intervals to the USDA for payment as work progressed. The invoices Offord purchased are listed in paragraph 11. Other invoices listed in paragraphs 12 and 13 which Offord did not purchase were submitted under the assigned contracts.

20. Pursuant to the terms of the agreement dated April 7, 1993 between Offord as Factor and Medina Reforestation as Debtor Offord promised to purchase "selected invoices" from Medina Reforestation on a recourse basis. Medina Reforestation guaranteed that all invoices purchased would be paid within 60 days or replaced with other accounts receivable. Paragraph 8 states:

> In the event anything contained herein is not construed as a purchase of invoices by Factor from Debtor, then and in that case, and as to all such invoices of accounts receivable not directly purchased by Factor from Debtor, Debtor hereby grants to Factor a security agreement [sic] in all such accounts receivable, both those pur-

chased by Factor and so sold and assigned by Debtor, and including those not purchased by Factor which are the property of Debtor, including all future accounts receivable generated by Debtor, including those purchased by Factor which security interest and agreement shall continue until such time as this agreement is terminated pursuant to the terms hereof. The termination of this agreement shall not be deemed a termination of the security interest granted to Factor until such time as Factor has been paid all sums due Factor pursuant to the terms of this agreement.

Paragraph 20 states:

> Factor is by this agreement granted and given a security interest in Debtor's accounts, to secure Factor payments on all accounts assigned and not paid within 60 days, and specifically is granted a security interest in the same to secure the Debtor's recourse obligations to pay invoices not paid by the account debtor within 60 days.

21. The debtors have filed tax returns for Miguel Medina and Medina Reforestation for years 1991 to May, 1993 showing total tax due of $51,015.61.

22. Under oath debtor Vicki Medina placed a fair market value of $175,000 on the real property located at 6101 Adams Road, Talent, Oregon.

### *Analysis of Offord's Interest in Contract Payments*

1. Assignment

■■■ Offord relies primarily on its assignments in asserting its priority over the IRS. 31 U.S.C. § 3727 and 41 U.S.C. § 15 are known as the Anti–Assignment Acts. The former regulates assignment of claims against the government; 41 U.S.C. § 15 is narrower, addressing assignment of interests in government contracts. The language of the statutes is largely identical. Generally, it prohibits assignment.[1] The following language appears as an exception to the prohibition:

---

1. These statutes were passed to protect the government from harassment through multiplication of the number of persons with whom it had to deal. It was determined the government must always know with whom it was dealing until settlement is made. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 371, 70 S.Ct. 207, 210, 94 L.Ed. 171 (1949).

The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided,*

1. That in the case of any contract entered into prior to October 9, 1940, no claim shall be assigned without the consent of the head of the department or agency concerned;

2. That in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment;

3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;

4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment. 41 U.S.C. § 15.[2]

■ If Offord has not met all of the conditions of the exception its assignments would not be valid and the United States would prevail. The facts demonstrate that Offord has met all statutory conditions. Offord, as the Medinas' factor, is a "financing institution" within the meaning of these provisions.[3] The USDA contracts each provided for aggregate payments in excess of $1,000, the USDA contracts assigned expressly permit assignment (subparagraph 2), they were not assigned to more than one party and were not further assigned (subparagraph 3). Offord promptly filed written notice of its assignment, on standard government forms, with the contracting and disbursing officers. There was no bond required (subparagraph 4).

■ The IRS asserts that the assignments are ineffective because Offord provided financing through purchase of only certain of the invoices arising from the contracts (see fact paragraph 11). Therefore the requirement of subparagraph 3 that the assignments cover all amounts payable under any contract was not met. This argument ignores the fact that, prior to any financing being provided, Offord received an unconditional absolute assignment of the balance of the then unpaid amounts due under the assigned contracts. The fact that it subsequently chose to wait to provide financing through invoice purchase until it saw invoices for work actually performed under the contracts does not diminish the binding effect of the assignments.

■ The court also notes that the statutory language in subparagraph 3 recognizes that such an assignment is effective as to the government although, prior to the assignment, certain contract payments may have been made to another, as were in this case made to Medina Reforestation. The court concludes that Offord has met the requirement of subparagraph 3 that the assignments cover all amounts payable under the contracts.

■ The government also asserts that Offord has not met the conditions listed in 31 U.S.C. § 3727(b). The court concurs that

---

**2.** The purpose of this subsection was to "make it easier for government contractors to secure financing for carrying out obligations to the Government to the end that government contracts might be speedily and effectively performed." *Waxman v. United States,* 112 F.Supp. 570, 588, 125 Ct.Cl. 464, 500 (1953). Additionally, the act implemented the Congressional preference that Federal contracts be financed by private rather than public capital. *Chelsea Factors, Inc. v. United States,* 181 F.Supp. 685, 690, 149 Ct.Cl. 202, 210 (1960). Similar language appears in 31 U.S.C. § 3727(c).

**3.** *United California Discount Corporation v. United States,* 19 Cl.Ct. 504 (1990).

these conditions have not been met. It is clear that if under 31 U.S.C. § 3727(c) and 41 U.S.C. § 15 Offord has met the conditions of the quoted exception its assignment is valid not withstanding § 3727(b).[4]

## 2. Security Interest

██ Offord claims a prior *ownership* interest in contract numbers 52–8462–3–07007 and 53–9A28–3–1N21 through the April 12, 1993 and May 14, 1993 assignments and a prior perfected *security* interest in contract number 43–8462–3–1073 through the April 7, 1993 financing agreement and the financing statement filed April 16, 1993. The documents show Offord actually has an absolute assignment of interest in contract numbers 52–8462–3–07007 and 53–9A28–3–1N21 and a security interest in all the debtors' accounts.

██ 31 U.S.C. § 3727 and 41 U.S.C. § 15 state generally that with regard to the government any "transfer" of an interest in a government contract is void as to the United States. Cases brought under these provisions and their predecessors have found that a "transfer" refers not only to the transfer of an ownership interest in a contract but also transfer of a lien interest therein.[5] The financing agreement which granted a security interest[6] to Offord in all the debtor's accounts does not meet the statutory exception established for financing companies and therefore is void *as to the United States.* In foreclosing on its security interest Offord would be unable to collect the proceeds on any of the contracts directly from the USDA. However, it could enforce its security interest in all the debtors' accounts (including those from all three contracts) against Medina Forestation after Medina Forestation received any proceeds from the contracts.

*Analysis of IRS' Interests in Contract Payments*

## 1. Setoff

## A. Common Law

██ In claiming priority over Offord to the USDA contract proceeds the IRS relies primarily on a right of setoff. It is clear that in relation to a debtor the United States has the same right to set off mutual debts under the common law as do other creditors. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Trust Co. of Washington, D.C.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) (citing *Gratiot v. United States,* 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841); *McKnight v. United States,* 98 U.S. 179, 186, 25 L.Ed. 115 (1878)).

██ The Court of Claims has held that this common law right exists independent of and is unaffected by the provisions of 26 U.S.C. § 6323, which statute establishes the validity and priority of tax liens on property as against others with interests in the property. *Aetna Insurance Company v. United States,* 456 F.2d 773, 197 Ct.Cl. 713 (1972). This court has read *Aetna.* Although 26 U.S.C. § 6323 has been amended since 1972 in minor ways, nothing in those amendments affects the validity of the basis upon which the court reached its holding. This court agrees with the holding. First, as the *Aetna* court stated, the statutory language of § 6323 clearly applies only with respect to the lien created under § 6321. Second, the legislative history of the amendments to § 6323 suggests that there was no intent to abrogate the *Munsey* holding. ·

There has been only one case brought to this court's attention which has held that the government may not exercise any right to set

**4.** 41 U.S.C. § 15 states: "Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes."

**5.** *Nutt v. Knut, Miss.,* 200 U.S. 13, 26 S.Ct. 216, 50 L.Ed. 348 (1906); *Malman v. U.S.,* 202 F.2d 483, rehearing denied 207 F.2d 897 (C.A.N.Y. 1953); *Lindberg v. Humphrey,* 289 F. 901

(D.C.Cir.1923); *Brooks v. Mandel–Witte Co., Inc.,* 54 F.2d 992 (2nd Cir.1932); *Dorr–Oliver, Inc. v. United States,* 432 F.2d 447 (1970).

**6.** Although the agreement at one point grants a "security agreement" in the proceeds, other sections of the agreement refer to a "security interest."

off taxes owing the United States. *Home Indemnity Company v. United States*, 313 F.Supp. 212 (W.D.Mo.1970). The authorities the *Home* court cites for this proposition are 20 AM.JUR.2d. *Counterclaim, Recoupment and Setoff* § 112 at 328, and *United States v. O'Grady*, 89 U.S. (22 Wall) 641, 22 L.Ed. 772 (1874). This court has read *O'Grady*. That case does not stand for the proposition for which it is cited. In that case the Supreme Court applied the doctrine of *res judicata* to prevent the government, after a case had been fully litigated, from attempting to exercise a right of setoff which had not been raised as a defense in the court case.

The court concludes that as against the debtor the IRS, as an agency of the United States, does have a common law right of setoff.

### B. Statutory

■ Neither 31 U.S.C. § 3727 nor 41 U.S.C. § 15 contains language which specifically authorizes the government to exercise a right of setoff against an assignee.[7] However, by negative implication the statutory language generally recognizes this right, not only by expressly removing the right as against funds previously paid to an assignee but also by specifically authorizing that in time of national emergency government contracts may provide for prohibition of the right of setoff to collect from assignees for, among other specified debts of the assignor, taxes.[8] *See, Arlington Trust Company v. United States*, 139 F.Supp. 556, 134 Ct.Cl. 251 (1956); *First Nat. Bank of Birmingham v. United States*, 117 F.Supp. 486 (D.C.Ala. 1953).

■ Regulations promulgated under 31 U.S.C. § 3727[9] specifically recognize that absent these statutory exceptions the govern-

ment may exercise its right of setoff against payments to an assignee under certain conditions. *See* 48 CFR 32.803(e).

41 U.S.C. § 15 states in part:

In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States *of any amount heretofore since July 1, 1950, or hereafter received under the assignment.* (Emphasis added)

31 U.S.C. § 3727 has similar language. Regulations promulgated under 31 U.S.C. § 3727 state: "No payments made by the government to the assignee under any contract assigned in accordance with the act may be recovered on account of any liability of the contractor to the government...." 48 C.F.R. § 32.804(a). The IRS argues that as the USDA made none of the payments under the assigned contracts directly to Offord it is not precluded by the statutory language from demanding repayment of all amounts distributed. Although the parties have not stipulated to the name of the payee on any of the issued USDA checks, the facts show that the amount of $11,701.72 which Offord received arose out of contract number 53–9A28–1N21 through an invoice dated April 19, 1993. The USDA received notice of assignment of this contract on May 13, 1993. Therefore Offord could not have been a named payee on that check. However, after they received this check from the government the debtors paid this money to Offord.

Given the legislative history of that portion of the statute which authorizes assignments

---

7. The provisions of 31 U.S.C. § 3716 specifically allow for a right of setoff against a claim against the government. It is not clear to what extent this statute applies to assignees. Interestingly, however, its provisions do not apply to a tax debt. 31 U.S.C. § 3701(d). 31 U.S.C. § 3727, on the other hand, alludes to setoff only in the negative by stating circumstances under which an assignee is *not* subject to setoff.

8. This language was added to the statute in 1951 because of uneasiness among lenders that the government could offset a debt the assignor owed to the government on account of other, independent transactions. *Central Bank v. United States*, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953).

9. These regulations have also been found by the courts to be applicable with regard to 41 U.S.C. § 15.

under certain conditions (see footnote 2) this court rejects the government's interpretation that the regulation authorizes the government to demand repayment by a legitimate assignee of funds it has received any time the payment flows to it from the government through the assignor. This interpretation defeats the purpose of encouraging private financing. It would also require assignees to repay funds in circumstances where the government, having received a notice of assignment, erred and thereafter named the assignor as payee on contract checks. The court concludes that as to the amount of $11,701.72 the government may not exercise any right of setoff.

 With the exceptions already noted, nothing in 31 U.S.C. § 3727 or 41 U.S.C. § 15 prohibits the government from exercising its right of setoff against assignees of government contracts if not prohibited by the contract.

## C. 11 U.S.C. § 553(a)

### (a) Liquidity

 To be set off the debts must be valid, enforceable and mutual. Offord takes the position that, in addition, the debts must be liquidated. It asserts that certain of the taxes alleged to be owing are unliquidated; as to those the remedy of setoff is unavailable. This court agrees with this position.[10] The debtors have filed income tax returns for Miquel Medina and Medina Reforestation for taxes accruing prepetition for the years in question showing amounts due of $51,015.61. As to these amounts the taxes are liquidated. The IRS has made no showing that the balance of taxes shown on its proof of claim are liquidated. The proof of claim shows that a large bulk of the taxes alleged are those where there have been no tax returns filed and no assessments made.

### (b) Mutuality

 The concept of mutuality contains several elements. To be mutual the debts must be in the same right and between the same parties, standing in the same capacity. 4 COLLIERS ON BANKRUPTCY ¶ 553.04[2] at 553–22 (15th ed. 1994). These elements can best be described by example. First, something must be owed on each side but the nature of the debt need not be identical. Second, one cannot set off one debt against a debt the debtor owes to another. Third, the debts must arise between parties acting in the same capacity. For example, an ordinary debt may not be set off against funds held in trust for the other. In bankruptcy debts arising prepetition may not be set off against debts arising postpetition.

 Courts are divided as to whether debts arise between the parties acting in the same capacity when two different agencies are involved in the transactions before the court.[11] This court has concluded that the parties have acted in the same capacity, that for that purpose mutuality exists and setoff is available.

 The federal government's common law right of setoff is exactly that. It belongs to the United States. Historically it has been exercised against anyone who has a "claim" against the government. *United States v. Tafoya,* 803 F.2d 140 (5th Cir.1986). Mutuality is not destroyed simply because a claim arose against the debtor in one agency of the executive branch while the debtor is owed an amount from a different agency. *See e.g., Cherry Cotton Mills v. United*

---

10. "[S]ince setoff is a sort of judicial accounting among potential judgments, it requires definite amounts to be used in computation of a net figure—hence the traditional requirement of setoff that debts be 'liquidated'." *In re Hancock,* 137 B.R. 835 (Bankr.N.D.Okla.1992). This case contains a studious and through discussion of setoff.

11. *United States ex rel. Small Business Admin. v. Rinehart,* 88 B.R. 1014 (D.S.D.1988), *aff'd in part, rev'd in part* 887 F.2d 165 (8th Cir.1989); *In re Britton,* 83 B.R. 914 (Bankr.E.D.N.C.1988); *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr. W.D.Tex.1984), *aff'd* 70 B.R. 22 (W.D.Tex.1987); *Matter of Butz,* 154 B.R. 541 (S.D.Iowa 1989); *In re Thomas,* 84 B.R. 438 (Bankr.N.D.Tex.1988); *In re Mohar,* 140 B.R. 273 (Bankr.D.Mont.1992) (mutuality exits); *In re Ionosphere Clubs, Inc.,* 164 B.R. 839 (Bankr.S.D.N.Y.1994); *Illinois v. Lakeside Community Hosp., Inc.,* 151 B.R. 887 (N.D.Ill.1993); *In re Hancock,* 137 B.R. 835 (Bankr.N.D.Okla.1992); *In re Pyramid Industries, Inc.,* 170 B.R. 974 (Bankr.N.D.Ill.1994) (mutuality does not exist).

*States,* 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946).[12]

 Although acknowledging this, Offord alleges that the IRS does not meet the mutuality requirements in other ways. It claims amounts owed to Miguel Medina dba Medina Reforestation cannot be set off against any tax debt owed by Vicki Medina or by Miguel Medina and Vicki Medina jointly. The IRS' proof of claim does not indicate the name of the taxpayer for each of the numerous types and years of taxes shown owing. From the notices of tax lien this court knows that at least some of the taxes arose separately against Vicki Medina dba Vicki Medina Church Company and against Miguel Medina dba Medina Reforestation. The court concurs that mutuality is lacking for setoff of any amounts due to Medina Reforestation against the tax debt due from Vicki Medina dba Vicki Medina Church Co. However, courts have divided over whether an individual debt may be set off against a joint debt. In deciding this point this court must examine the equities in light of the particular facts of the individual case.

 Under our facts the answer lies in the direction given by the court in *Rochelle v. United States,* 521 F.2d 844 (5th Cir.1975). There the Court considered the possibility of authorizing an offset of a government's claim against a partnership against its debt to one of the partners. In finding the offset met the requirements of mutuality the court stated that the government could not complain about any loss of its claim against the other partners as it was the entity seeking the setoff. Further, the partner has no right to complain as he was severally as well as jointly liable for the partnership debt. Such are our facts. Miguel Medina has joint and several liability for any tax debt arising from tax returns filed with Vicki Medina. 26 U.S.C. § 6013(d)(3). Further, the IRS, requesting setoff, cannot complain. The court concludes that under our facts mutuality is not de-

stroyed by offset of the government's claim for any taxes jointly owed by Miguel Medina and Vicki Medina against the amounts owed by the government to Miguel Medina dba Medina Reforestation under the contracts.

 Offord argues that setoff is not mutual because the debt from USDA is owed to it, not to Medina Reforestation. In making this argument, Offord overlooks the fact that under certain circumstances assignees take subject to the right of setoff held by a creditor of the assignor. It also argues that this setoff would violate § 553(b). This is incorrect; § 553(b) applies only to prepetition setoffs.

 The facts indicate that certain of the USDA payments were made postpetition. May these amounts be set off against a prepetition debt? My conclusion is that they may. Under the terms of the reforestation contracts the government's obligation to pay for the reforestation services arose at the time the contracts were executed although the contract was wholly executory.[13]

### (b) Waiver

 The right to set off is an equitable remedy which arises when the intent to set off is asserted. If it is not asserted it may be lost. If a creditor's conduct is inconsistent with a subsequent claim of setoff he will be held to have waived it. *Cumberland Glass Manufacturing Company v. DeWitt and Company,* 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915).[14]

 Between the Medinas' Chapter 13 filing and their Chapter 11 filing the IRS had issued a notice of levy pursuant to 26 U.S.C. § 6331. However, this notice did not cover the contracts before this court. In addition, the effect of a levy is simply to secure the property levied upon until further steps are taken to determine final disposition of the property. Conversely, exercise of any right of setoff results in elimination of all

---

**12.** For an in depth discussion on this point see this court's opinion *In re Gibson,* 176 B.R. 910 (Bankr.D.Or.1994).

**13.** *See, Moratzka v. United States,* 63 B.R. 56 (D.Minn.1986).

**14.** *See also First National Bank of Portland v. Dudley,* 231 F.2d 396 (9th Cir.1956).

rights the debtor had in the property set off in exchange for a credit against amounts due the exercising creditor. Consequently, issuance of the notice cannot reasonably be interpreted as assertion of a right of setoff.

 Under contract number 52–8462–3–07007 the debtors earned a total of $58,383.55 of which $38,838.55 is being held by the USDA and $19,545 of which was distributed by the USDA directly to the debtors and used as cash collateral under order of the court. Under contract number 53–9A28–3–1N21 the debtors ultimately earned a total of $81,030.32 of which $47,331.39 was distributed by the USDA prepetition directly to the debtors, (of this latter amount, $35,629.67 is represented by nonnegotiated drafts held by the Medinas' attorney and $11,701.72 is represented by a draft which was negotiated and proceeds from which were paid by the debtors to Offord), $32,056.33 is being held by the USDA and $1,642.60 was distributed by the USDA postpetition directly to the debtors and used as cash collateral under order of the court (with the exception of $850.02). Under contract number 43–8462–3–1073 the debtors earned a total of $11,487.50 which was all distributed by the USDA postpetition directly to the debtors and used as cash collateral under order of the court. The court finds that the IRS has not waived the government's right of setoff as to the contract funds still held by the USDA ($70,894.88) and the funds represented by the nonnegotiated checks ($35,629.67).[15] Certainly the automatic stay did not eliminate any right of setoff held by the government and post-petition it quickly asserted that right through filing its motion for relief.

 Postpetition, on June 14, 1993 the IRS filed a Notice of and Motion to Deny Use of Cash Collateral, alleging a tax lien on all the debtors' cash collateral, including accounts receivable arising out of the USDA contracts at issue herein. Simultaneously it filed a motion to lift the automatic stay in order to set off amounts owed against the amounts due Medina Reforestation under the USDA contracts and to complete the sale of debtors' Talent real estate. Shortly thereafter the debtors in possession filed a motion to use cash collateral in the form of payments made postpetition by the USDA on the contracts. Subsequently the Service withdrew its motion for relief as to the sale of the property and entered into a stipulation with the debtors in possession and Offord for use of cash collateral pending a decision on its motion to lift stay for purposes of setting off. Pursuant to this stipulation the court entered an order which authorized the debtors in possession to use cash collateral flowing from the USDA contracts in the amount of $31,825. This amount is represented by an invoice dated June 1, 1993 for $11,487.50 and an invoice dated June 2, 1993 for $19,545 arising from contract number 52–8462–3–07007 and an invoice dated June 10, 1993 for $1,642.60 (less $850.02) under contract number 53–9A28–3–1N21. (There is an unexplained discrepancy of $200.10 between the amount of cash collateral authorized for use under the order and the invoice amounts.) The stipulated order continues:

> As adequate protection for the use by DIP of cash collateral in which IRS and Offord Finance, Inc. claim a security interest, IRS and Offord Finance, Inc. are hereby granted the following: (a) For the purpose of securing the impairment of the value of either IRS's and Offord Finance, Inc's alleged security claim or both resulting from the use of cash collateral, IRS and Offord Finance, Inc. shall be granted a security in real property owned by DIP located at 6101 Adams Road, Talent, Jackson County, Oregon, 97540. The obligation of DIP shall be evidenced by a Promissory Note in the sum of $31,825.00 made payable jointly to IRS and Offord Finance, Inc., and secured by a Trust Deed on the real property referred to above with IRS and Offord Finance, Inc. as joint beneficiaries....

 By allowing the debtor-in-possession's use of the cash collateral it is clear that

---

**15.** In *U.S. v. Trinity Universal Insurance Co.,* 249 F.2d 350 (5th Cir.1957), the court held that the government had not waived its right to set off tax debt where, although it had issued its check to the contractor, the check had not been cashed and was being held pending outcome of the case. The court agrees with the *U.S. v. Trinity* holding. The funds represented by the nonnegotiated checks are still within the control of the government through the USDA.

the IRS waived its right of setoff against those funds.[16] The court will address adequate protection if necessary through future court order.

## 2. Tax Lien

The IRS asserts priority to the contract payments through its filed tax liens. The government's lien for taxes attaches upon assessment of the underlying tax. With minor exceptions this lien attaches to all the taxpayers' property. 26 U.S.C. § 6321. Offord asserts that the United States' tax lien could not attach to accounts it was assigned, citing *In re Halprin*, 280 F.2d 407 (3rd Cir.1960).[17] In *Halprin*, the court held that the tax lien arising under 26 U.S.C. § 6321 does not attach to a wholly executory promise to pay which is contingent upon an exchanged performance. *Halprin* has been criticized by commentators.[18] This court believes that the better view is that the term "all property and rights to property ..." in 26 U.S.C. § 6321 should be interpreted to include contingent contract rights. In *Seaboard Surety Co. v. United States* the Ninth Circuit, in a case on all fours, held that the tax lien attached to the taxpayer's interest in the contract on the date of the contract award. 306 F.2d 855 (9th Cir.1962).

26 U.S.C. § 6323(a) provides generally that the lien which arises on behalf of the United States at the time of assessment under 26 U.S.C. § 6321 is not valid against third parties until notice thereof is filed of record. 26 U.S.C. § 6323(f)(1)(A)(ii) states that with regard to personal property, whether tangible or intangible, this notice shall be filed in the office within the state which is designated for such filing by the laws of that state in which the property is situated.[19] For Oregon the place so designated is the office of the Secretary of State in which the property is situated. Therefore the notice of tax liens marked Exhibits C, D, and E filed with the Jackson County Clerk did not provide constructive notice to third parties of the United States' lien on any of the Medinas' personal property interests.

The agreed facts show that the United States filed two notices of tax lien with the Secretary of State for certain taxes assessed in 1990, 1991 and 1992 against Vicki Medina and Miguel Medina as shown in paragraph number 4. The lien listed as Exhibit B was filed against "Vicki Medina [and] Vicki Medina Church Co." and the lien listed as Exhibit A was filed against "Miguel Medina [and] Medina Reforestation." The USDA contract receivables at issue are payable to Medina Reforestation. Exhibit B does not give constructive notice to third parties of the government's lien on the USDA contracts as Vicki Medina had no interest in Medina Reforestation. This court concludes that the United States holds only a validly perfected tax lien as to the USDA contracts for $18,975.08 through the notice of tax lien marked as Exhibit A.[20]

### Rights of Priority

The court must still address to what extent the United States may claim a prior right in

---

16. It is not clear whether the parties to the stipulation intended the note and trust deed to provide adequate protection to the IRS for those amounts it had claimed through assertion of its right of setoff as well as those amounts it claimed through its tax lien. The right to set off had been early and adamantly asserted. It constitutes a form of charge against property which gives the holder a status similar to that of a creditor secured by lien. The court concludes that, despite the use in the quoted order of the ambiguous term "security interest", that the parties intended that the note and trust deed provide the IRS with adequate protection of its interest in the USDA contract proceeds through its asserted right of setoff as well as its interest therein through its tax lien.

17. *See also U.S. v. Long Island Drug Co.*, 115 F.2d 983 (2nd Cir.1940).

18. Young, *Priority of the Federal Tax Lien*, 34 U.Chi.L.Rev. 723, 745 (1967); Coogan, *The Effect of the Federal Tax Lien Act of 1966 upon Security Interests Created under the Uniform Commercial Code*, 81 Harv.L.Rev. 1369, 1373 (1968).

19. 26 U.S.C. § 6323(f)(2)(B) states that in the case of personal property the situs of the property is deemed to be at the residence of the taxpayer at the time of the filing. Under our facts it was Oregon.

20. Exhibit A is notice of a lien arising from the amounts stated therein which were duly assessed at the time of the filing. It cannot be notice for taxes not yet assessed.

the debtor's funds under either its claim for setoff or its tax lien to those of a third party which claims priority through an absolute assignment and a perfected security interest. On this issue the *Munsey* court holding that the United States has a general right of setoff is not helpful. *See, U.S. v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). In *Munsey* a contractor's surety was attempting to obtain funds from the United States for payments it had made to subcontractors. The surety could not recover as subrogee of the subcontractors because the latter do not have enforceable rights against the United States for their compensation. The surety under a payment bond did not have rights of its own in the funds held by the government. Finally, although the surety would be subrogated to any rights of the contractor, under the facts the contractor had none. Here Offord claims a right to the funds through its contracts of assignment and security with Medina Reforestation, the party contracting with the government, which right this court has validated.

### 1. Tax Lien

 The priority of the government's tax lien arising out of Exhibit A over Offord's interest in all accounts, as well as over its absolute assignment of contract numbers 52–8462–3–07007 and 53–9A28–3–1N21 is not determined under the Anti–Assignment Acts but rather under 26 U.S.C. § 6323. 26 U.S.C. § 6323(b), (c), and (d) provide protection for certain interests despite duly filed notice of the tax lien. None of these subsections provide Offord, as assignee, protection from the government's lien on contract numbers 52–8462–3–07007 and 53–9A28–3–1N21. Subsection (c)(1)(A) is the only provision under which Offord might receive protection for its security interest in the debtors' accounts. It applies if the following requisites are met: 1) the security interest [21] stems from a writ-

ten agreement which (a) was entered into before the tax lien was filed, and (b) qualifies as a "commercial transactions financing agreement" under that section; 2) the loans were made pursuant to the written agreement within 45 days of the tax lien filing or, if earlier, prior to receiving actual notice or knowledge that the tax lien had been filed; 3) the written agreement covered "qualified property" which was "acquired" by the taxpayer within 45 days of the tax lien filing; and 4) state law gives the security interest holder priority over a judgment lien by an unsecured creditor as of the time the tax lien is filed. *Atlantic National Bank v. United States,* 536 F.2d 1354, 1358 (Ct.Cl.1976) (citing *Donald v. Madison Industries, Inc.,* 483 F.2d 837, 842 (10th Cir.1973)). Offord's financing agreement was not executed before the notice of tax lien marked Exhibit A was filed. Therefore, this tax lien, as to the assessed amounts shown therein, is prior to Offord's security interest in all the debtors' accounts.

### 2. Setoff

#### A. Common Law

 At common law generally a right of setoff which arises out of the same transaction as that by which the claim of the assignee was created is usable against the assignee in precisely the same cases that it would be in reducing the assignor's remedy. ARTHUR CORBIN, 4 CORBIN ON CONTRACTS § 896 at 596 (1951 & Supp.1993). If the claim of setoff arises out of a collateral transaction it is available against the assignee if it existed as a matured claim at the time of the assignment. It is not available against the assignee if the claim was acquired after notice of the assignment. *Id.* § 897 at 600–601.[22]

---

**21.** 26 U.S.C. § 6323(h)(1) defines a security interest as any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obli-

gation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

**22.** In Oregon, as in many states, these rules have become statutory. *See* O.R.S. 79.3180 and O.R.S. 80.020.

## B. Code of Federal Regulations

 Except for the language regarding amounts previously paid to assignees and the national emergency language quoted below, the statutes do not address the issue of priorities between assignees and the government's exercise of the right of setoff. Certain priorities, however, are established by 48 CFR 32.803(e). It states:

(e) When an assigned contract does not include a no-setoff commitment, the Government may apply against payments to the assignee any liability of the contractor to the Government arising independently of the assigned contract if the liability existed at the time notice of the assignment was received even though that liability had not yet matured so as to be due and payable.

The regulatory language reflects the same distinction made at common law between liabilities arising out of the same transaction and those that do not.

Within another context, this distinction is reflected by the language of the statute. Prior to amendment in 1951 the Assignment of Claims Act stated in part, and with reference to contracts entered into during times of war or national emergency, that "payments to an assignee of any claim arising under such contract shall not be subject to reduction or set-off." 31 U.S.C. § 203. This language was amended in 1951 to read "... whether arising from or independently of such contract." *Central Bank v. United States*, 345 U.S. 639, 643, 73 S.Ct. 917, 919, 97 L.Ed. 1312 (1953).

 In a case interpreting the former language which involved the attempted setoff of a contractor's taxes against proceeds of an assigned contract the Supreme Court held that the contractor's indebtedness to the United States for taxes arose "independently" of his governmental contract. The government could not exercise setoff. *Central Bank v. United States*, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953). The IRS's claim for taxes arose out of a transaction "collateral" or "independent" to that out of which Offord's claim arose. At common law the government may set off against a debt arising out of a collateral transaction if it existed as a *matured* claim at time of assignment. Under 48 CFR 32.803(e) it may set off if the "liability existed at the time notice of the assignment was received *even though that liability had not yet matured....*" (Emphasis added.) The liquidated taxes shown in the proof of claim are all for tax periods prior to May, 1993 when Offord had acquired any rights in the contracts with the exception of a FUTA tax in the amount of $491.72 for the period ending December 31, 1993 and payroll taxes in the amount of $12,565.78 for the quarter ending June 30, 1993. For these exceptions the debtors had no liability as of May, 1993. The IRS held a matured claim against the debtors for the balance of the liquidated taxes. Therefore, as to those taxes for which setoff is otherwise available under nonbankruptcy law, the IRS has priority over Offord as assignee.

 Offord points out that under these regulations "assignment of claims" is defined as "the transfer or making over by the contractor to a bank, trust company, or other financing institution, as security for a loan to the contractor, of its right to be paid by the Government for contract performance." 48 CFR 32.801. It argues that it did not take its assignments as security for a loan. Rather, it received absolute assignments. Therefore the regulations do not authorize setoff against it.

 The court notes that the *statutory* definition of "assignment" is "(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim." 31 U.S.C. § 3727(a). The court must attempt, when able, to interpret regulatory language in a manner which is consistent with its related statute. *See, Helvering v. Sabine Transp. Co.*, 318 U.S. 306, 63 S.Ct. 569, 87 L.Ed. 773 (1943). If the two cannot be reconciled the statutory language prevails. *Id.* The regulatory language places a limitation on the definition of "assignment" which is not present in the statutory language. To that extent 48 CFR 32.801 is deemed inappli-

cable.[23]

### 3. 11 U.S.C. § 553(a)

██ Under our facts, § 553(a) plays no role with regard to contract numbers *52–8462–3–07007* and *53–9A28–3–1N21*. This section applies to setoff of debts between a creditor and the debtor. The debtor no longer has any interest in those contracts. The court has determined that the assignments to Offord are valid. Under these contracts, therefore, the USDA owes its payments to Offord. Any priorities between the IRS and Offord as to these payments is not determined under § 553(a).

██ 11 U.S.C. § 553(a) is applicable as to those contracts not assigned prepetition to Offord, but in which it took only a security interest. In bankruptcy, exercise of setoff postpetition is discretionary with the court and is based on equitable principles. Section 553 does not enlarge any right of setoff a creditor has under nonbankruptcy law. Rather, it allows for its exercise if the conditions for setoff are present. Sitting in equity, the court should ask whether setoff would result in a priority of payment which otherwise is not recognized under the Bankruptcy Code and which would harm unsecured creditors.

██ Allowing setoff under our facts is not inequitable to unsecured creditors. Under both bankruptcy and nonbankruptcy law the funds at issue will be distributed in full to either the IRS or Offord. They would never have been available for distribution to the general unsecured creditors. As for Offord, when neither the debtor nor the estate's general unsecured creditors are implicated, nothing in § 553(a) authorizes this court to ignore the priorities between rival creditors to the fund which are established by nonbankruptcy law.

### *Marshalling*

██ Offord has requested that if this court determines that the IRS has priority to the USDA contract payments it apply the doctrine of marshalling to require the IRS first to apply any proceeds it receives from sale of the real property located at 6101 Adams Road, Talent, Oregon to the debtors' tax debt.

██ The doctrine of marshalling is an equitable remedy which the bankruptcy court may apply in its discretion. In Oregon it has been defined as a "basic principle of equity that where a senior creditor has recourse to two funds and a junior creditor has recourse to but one of them, the senior creditor must seek to satisfy itself first out of the fund in which the junior creditor has no interest." *Community Bank v. Jones*, 278 Or. 647, 678, 566 P.2d 470, 488 (1977).

This court is not in a position to apply the doctrine because it does not yet know the amount of the government's *allowed* tax claim. It notes that if the tax claim, as allowed, is close to the size stated in the government's proof of claim, depending on the number and value of assets otherwise available to the IRS to satisfy the debt, marshalling might be a useless act. Under those circumstances, the amount the government would receive from both the USDA payments and proceeds from such sale would not be sufficient to pay the tax claim in full. Under those circumstances Offord would not benefit from application of the doctrine.

### *Conclusion*

██ Subtracting the amount used by the debtors as cash collateral, the amount in controversy between the parties is $106,524.55. Of this amount, $11,701.72, having been paid to Offord, is not available for setoff. Of the total amount shown on the IRS's proof of claim, the amount of $51,021.58 (taxes of $51,015.61 and related interest of $5.97) is liquidated and may be set off. In addition, the IRS has a valid tax lien in the amount of $18,975.08. As this lien is for taxes other than the taxes determined to be liquidated, it may be foreclosed for the amount secured.

██ The Internal Revenue Service will be granted relief from the automatic stay to

---

**23.** It is interesting to note that if the regulatory definition of "assignment of claims" were deemed a correct interpretation of the statute's applicability Offord's assignment would be void as not an assignment for security.

set off the amount of $51,021.58 against the contract payments being held by the USDA as well as, to the extent necessary, the contract amounts paid to Medina Reforestation which are represented by checks being held in trust by the debtors' attorney. It will also be granted relief to foreclose its tax lien marked Exhibit A. The balance of the payments due under the contracts shall be paid to Offord. After its setoff is completed, the IRS will be required to file an accounting with Offord and the court showing application of amounts set off and application of amounts from any other collateral which secures the tax debt. The court will then determine the extent to which the estate must provide adequate protection to either the IRS or to Offord for use of their cash collateral.

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated. An order consistent herewith shall be entered.